**SELDEN v. HEINER, Collector of Internal Revenue.**

(District Court, W. D. Pennsylvania. January 18, 1926.)

No. 3163.

1. **Internal revenue** ⊚⇒7—Worthless debts, deductible from income when taxpayer in good faith believes them uncollectible (Revenue Act 1918, § 214 [a], [7], being Comp. St. Ann. Supp. 1919, § 6336⅛g).

Under Revenue Act 1918, § 214 (a), (7), being Comp. St. Ann. Supp. 1919, § 6336⅛g, the taxpayer is made, in the first instance,

judge of the worthless character of a debt, and when he, in good faith, believes that the legal situation is such considering all the surrounding and attendant circumstances, that the debt is not in fact recoverable, he is justified in treating it as worthless and charging it off his books, and deducting it from his income.

2. **Internal revenue** ⊚⇒7—Deduction from income for worthless debts held justified.

Plaintiff was the principal creditor of two corporations which had engaged in the experimental manufacture of a chemical by a new and untried process after large expenditures, the experiment proved commercially a failure, and the corporations were largely insolvent and determined to liquidate. Their assets consisted chiefly of buildings and special machinery designed for the particular manufacture and of little value for other uses. *Held*, that plaintiff was entitled to deduct from his income as worthless all of said indebtedness above the dividends he might receive from the liquidation at the estimated value of the assets which probably exceeded what would actually be realized therefrom.

3. **Internal revenue** ⊚⇒7—Taxpayer held not deprived of right to claim deduction from income for worthless debts because he might have made larger claim.

A taxpayer *held* not deprived of the right to deduct from income, as worthless indebtedness to him from certain corporations on open account, because he did not, as he might have done, also deduct an indebtedness from them on notes.

4. **Internal revenue** ⊚⇒7—Stockholder held entitled to deduct from income worthless debt due him from corporation.

Plaintiff *held* not deprived of the right to charge off as worthless and deduct from his taxable income, an indebtedness to him from certain corporations, where the claim was legitimate and made in good faith, because he was the principal stockholder in such corporations.

At Law. Action by James M. Selden against D. B. Heiner, Collector of Internal Revenue. Judgment for plaintiff.

S. Leo Ruslander and George K. Warn, both of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. This is an action against the collector of internal revenue to recover the sum of $10,295.45, with interest, being the amount of an additional assessment of income taxes for the year 1920, which plaintiff avers was illegally assessed against him, and which he paid under protest, and brings this action to recover.

By stipulation filed, the parties agreed that the issues shall be tried and determined

by the court without the intervention of a jury.

From the evidence, the court finds the following facts:

(1) The Selden Company in 1917 was a corporation engaged in the brokerage business, handling whisky warehouse receipts. The plaintiff owned and controlled the Selden Company, and, due to impending national prohibition, looked about for some new line of business which could be carried on in the future and would be a practical investment for his own funds and a means of employment for his son, C. G. Selden.

(2) In 1917, the United States, as a part of its war activities, was endeavoring to induce its citizens to engage in the manufacture of chemicals used in dye industries and other like industries, the supply of which had previously been largely derived from German sources. The discoveries of German chemists and scientists were all placed at the service of American citizens who desired to engage in this line of manufacture. In this way the plaintiff was induced to take up the manufacture of phthalic anhydride by a new process, which it was believed would enable this country to obtain its supply of this particular chemical. Plaintiff had the title to the patents and processes, which he proposed to use, vested in the Selden Company, which expected to sell the same or license manufacturers if the business was successful, and took up the actual manufacture of said product through a certain phthalic anhydride, while the Selden Company furnished the funds. In this way, the Selden Company was, at all times, the principal creditor of the Walker Chemical Company, and, as the funds chiefly came from the plaintiff, he was in turn the principal creditor of the Selden Company. The patents and processes that were to be used had never been put into practical use, and, in order to finance the expenses of building the necessary machinery to develop such new processes, the plaintiff, aside from his investment in the stock of the two companies, during the years 1919 and 1920, advanced to the Selden Company, which in turn loaned the money to the Walker Chemical Company, in the neighborhood of $140,000. This money was used in experimental work, the only results of which were a series of failures. No real progress was made in the perfection of the desired apparatus to manufacture phthalic anhydride. While some of this chemical was manufactured by the apparatus used, it cost more to produce it than could be obtained for it in the market.

(3) On December 31, 1920, the Selden Company was indebted to the plaintiff, on account of moneys advanced by him to the Selden Company, in a large amount of money; of such indebtedness the amount of $72,796.10 was evidenced by unsecured promissory notes executed by the Selden Company in favor of the plaintiff.

(4) While the record on the books of the Selden Company showed a balance due to the plaintiff on December 31, 1920, on account designated as an open account of $68,093.66, this amount included a credit of $37,900, representing stock of the Selden Company, which plaintiff had turned back to it, and which therefore did not represent a cash loan or a cash transaction, and this $37,900, deducted from the $68,093.66, shown on the account, leaves the sum of $30,193.66, which represents a total amount due the plaintiff on said open account, which does not include any portion of the indebtedness prior to that date, which was represented by the unsecured promissory notes executed by the Selden Company as aforesaid.

(5) On the aforesaid date, December 31, 1920, the Walker Chemical Company, owned and operated by the Selden Company, owed the plaintiff $811.08, which was the total amount due by it on open account as of said date.

(6) Plaintiff, in his individual income tax return for the calendar year 1920, deducted from his gross income $31,904.74, which he claimed as a bad debt owed him by the Selden Company. It was conceded by the plaintiff at the trial that the correct amount which plaintiff deducted as a bad debt should be $30,193.66 owed by the Selden Company, and $811.08 owed by the Walker Chemical Company, or a total of $31,004.74 instead of $31,904.74, claimed in plaintiff's statement.

(7) The plaintiff in 1920, owned about 61 per cent. of all the outstanding capital stock of the Selden Company, and the latter company owned a majority of the capital stock of the Walker Chemical Company, while the minority of said stock, or nearly all thereof, was owned by the plaintiff individually.

(8) The Selden Company and the Walker Chemical Company has no interest outside of the development of the patents and processes and the manufacture of phthalic anhydride, and were in fact operated as one company, although maintaining separate corporate existences. In the early part of 1920, a final effort was made to perfect an apparatus for the successful manufacture

of such chemical, and additional moneys were advanced by plaintiff, which were used in experimental work, but which was unsuccessful. The stockholders outside of the plaintiff were unwilling to advance any further funds, and did not, at any time, do more than make the original investment in their stock.

(9) Some time near December 31, 1920, it was decided by the company to stop manufacturing operations, salvage what could be obtained from the plant and equipment, and consider the business a loss. At that time there was no method known to the plaintiff or the officers, directors, and employees of the two companies by which the manufacture of phthalic anhydride could be proceeded with on a commercially successful basis, and it was decided to discontinue business and liquidate. The employees not under contract were discharged. It was the opinion of the plaintiff that his total investment, including the amount paid for stock, the amount represented by promissory notes, and the amount due on open account, was a total loss; this chiefly because, in addition to the failure of the business on December 31, 1920, plaintiff was indorser on notes of the Selden Company discounted and held by banks, in the sum of $25,000, and hence he believed that the total salvage that he would be able to obtain out of the assets of both companies would not be enough to cover his loss as indorser on the said notes.

(10) While plaintiff considered his total investment a loss, he did not charge off the whole of the indebtedness, as the result would have been to wipe out all of his income, and he felt that as a good citizen he would not be justified in thus avoiding all of the tax assessed against him.

(11) Neither the Selden Company nor the Walker Chemical Company liquidated in 1920, nor were there any insolvency or bankruptcy proceedings instituted by or against either of the corporations in 1920. The evidence as to the financial status, on December 31, 1920, of the Walker Chemical Company is as follows:

### Assets.

| | |
|---|---|
| Cash | $ 770.12 |
| Accounts receivable | 900.00 |
| Inventory (raw materials) | 2,500.00 |
| Inventory (containers) | |
| Inventory (finished product) | 20,000.00 |
| Equipment | 5,000.00 |
| Buildings | 1,000.00 |
| Land | 4,000.00 |
| | $34,170.12 |

### Liabilities.

| | |
|---|---|
| Total | $166,160.07 |

Walker Chemical Company estimated will pay 20½ per cent. on a dollar of the above. $148,859.33 is owed to the Selden Company, which will receive $30,516.16.

### The Selden Company.

#### Assets.

| | |
|---|---|
| Cash | $ 115.11 |
| Fixtures | 250.00 |
| J. M. Selden account | 1,500.00 |
| | $ 1,865.11 |
| Amount to be received from Walker Chemical Company liquidation, 20½ per cent. of $148,859.33 | $30,516.16 |
| Total | $32,381.27 |

#### Liabilities.

| | |
|---|---|
| Total | $206,623.47 |

The Selden Company will therefore pay 15.6 per cent. on a dollar to its creditors. On the $140,889.76 due J. M. Selden, he will receive $21,978.77.

J. M. Selden was indorser on $25,000 of notes which the Selden Company had discounted with banks. This $25,000 is part of the $206,623.47 total indebtedness of the Selden Company shown above. The banks will receive 15.6 per cent., or $3,900, as unsecured creditors of the Selden Company, leaving $21,100 to be paid by J. M. Selden, indorser on said notes.

### J. M. Selden Company.

| | |
|---|---|
| Will receive his 15.6 per cent. on $140,889.76 owed by the Selden Company or | $21,978.77 |
| Must pay to make good indorsements | 21,100.00 |
| Balance | $ 878.77 |

(12) Assuming that the foregoing estimate of values is correct, the small balance of $878.77 shown as the amount plaintiff would have received on final liquidation would certainly have been wiped out by the expenses of liquidation, the additional interest, and the cost of operating the companies long enough to liquidate.

(13) The amount of $31,004.74, the amount due the plaintiff on open account, as above specified, from the Selden Company and the Walker Chemical Company, as of December 31, 1920, was charged off by the plaintiff as a bad debt within the taxable year 1920.

(14) The amount charged off by the plaintiff as a bad debt in 1920 represented an indebtedness as of that date, as to which all of the surrounding and attendant circumstances indicated that it was a bad debt that was worthless and uncollectible.

(15) I am of opinion, and so find, that the method of computing values shows

a result more favorable to the defendant than would have been realized through actual liquidation. The principal items of plant and equipment were specially built units for heating the chemicals used, and were not adapted to any other use. The building was of cheap construction, not specially fitted to general manufacturing purposes, and the chief cost was the amount expended for foundations and erection. Experience has demonstrated that the apparent equity in case of a mortgage, being the difference between the amount of the mortgage and the estimated value of the land, is much greater than is shown to exist where foreclosure proceedings are instituted and sale results. And the same principle applies in cases of liquidation where the apparent or estimated value is small and the liabilities great. Liquidation usually wipes out and destroys such apparent or estimated difference in value.

The issues in this case arise under section 214 (a), (7) of the Revenue Act of 1918, being Comp. St. Ann. Supp. 1919, § 6336⅛g, which allows as a deduction "debts ascertained to be worthless and charged off within the taxable year."

Article 151, regulation 45, provides as follows:

"Where all surrounding and attendant circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction."

It is the plaintiff's position that he has shown an unsuccessful operation of the chemical business, determination to liquidate in December, 1920, and the value of the assets of both companies had they been thus liquidated, and that this showing demonstrates that plaintiff would not have received anything on his notes or open account, and, further, that this evidence of value has not been disputed by any competent evidence. In U. S. v. Frost, 25 Fed. Cas. No. 15,172, page 1221, the defendant was indicted for false return of income, and in that case the act permitted a deduction of "debts ascertained to be worthless," and the court on this point said:

"The language is, 'ascertained to be worthless.' By whom or how? The law is silent on this important point, and therefore there must be a discretion given to the person making his returns and, if that discretion is used fairly and honestly, there would seem to be no just ground of complaint."

It is said in appeal of Pacific Pipe & Supply Co., 2 U. S. Board of Tax Appeals, 870, that:

"The words 'debts ascertained to be worthless' used in the statute must be given a reasonable interpretation. The possibility that a small part of the debt may ultimately be recovered, will not prohibit the writing off of the debt as worthless for income tax purposes when every consideration of good business directs that they be charged off."

In appeal of Steele Cotton Mill Company, 1 U. S. Board of Tax Appeals, 299, the court said:

"Before a taxpayer is entitled to take a deduction for a 'debt ascertained to be worthless,' he must take reasonable steps to determine that there is no probability of payment or collection and have prima facie evidence to prove that the debt has no value."

Whether the debt was in fact a worthless debt is a question of fact to be determined by all the facts and circumstances of the case, and, generally speaking, if it was a bad debt and was charged off during the year for which claim was made, the deduction would be proper.

The defendant contends:

First. That the plaintiff has not as a matter of fact established that the amount in controversy charged off in his 1920 tax return was ascertained to be worthless at December 31, 1920.

Second. That the deduction in question represents a part only of the debt owed to the plaintiff on December 31, 1920, and, as the whole indebtedness represented by open account and notes was not charged off as false, judgment must be entered for the defendant.

Third. That since plaintiff, by stock ownership, owned and controlled the Selden Company and the Walker Chemical Company, he could not charge off as a bad account any indebtedness due him from either company until he had, by legal action, demonstrated the value or lack of value of said account.

[1, 2] As to defendant's first defense: What is meant by the words of the statute, "debts ascertained to be worthless and charged off within the taxable year." The statute prescribes no method by which such fact shall be ascertained, and we must not become wiser than the statute, and attempt to substitute some method of ascertainment not prescribed, and therefore presumably not contemplated by Congress. The statute contemplates a situation with which the taxpayer is confronted, and certainly he is made, in the first instance, judge of the worthless character of the debt. When he, in good faith, believes that the legal situation of the

debt is such, considering all the surrounding and attendant circumstances, that the debt is not in fact recoverable, and that legal action to enforce payment would in all probability not result in obtaining any substantial part of the debt, although there might be a remote possibility that a small part thereof might ultimately be recovered, in this situation, he is justified in treating the debt as worthless and charging the same off on his books. He is certainly not required to do a vain thing, to institute some expensive proceeding to legally ascertain what he already knows. If such deduction is not allowed, and he is compelled to pay and sue for recovery, he must then establish by the fair weight of the evidence such facts as reasonably sustain his contention. No one, I think, could listen to the evidence produced by the defendant establishing the experimental character of the business in which the plaintiff and the companies were engaged; the tremendous expenses connected with such experiments; their repeated and persistent failures; the apparently hopeless financial condition of the companies; the special purpose for which the plant had been erected, and the machinery installed, suitable for no other line of work than that in which it was being used; the refusal of other stockholders to advance any money to aid in the apparently hopeless enterprise; the very heavy indebtedness owed by the companies to the plaintiff, including not only large amounts of money advanced by him, but also his personal liability on $25,000 of the companies' obligations held by the banks; the determination of the companies, when confronted by this apparently hopeless situation, to shut down the plant, go out of business, and suffer the heavy loss sustained—no one could hear this testimony, coming from an honest and trustworthy source, without agreeing with the plaintiff that the debt in question, viewed from every sane and reasonable business standpoint, was worthless and should be charged off and a claim of deduction therefor made in his tax return. In the face of this testimony, the book, and other supposititious and misleading evidence of values, amount to practically nothing.

[3] The second defense, viz. that the deduction in question represents a part only of the debt owed to the plaintiff on December 31, 1920, and, as the whole indebtedness represented by open account and notes was not charged off as worthless, the defendant is entitled to judgment. This position, as applied to the circumstances in this case, seems purely technical. The general proposition, as shown by the authorities cited, that a part of a debt cannot be charged off, is fully recognized. For instance, in A. R. R. 7641, decision of Committee on Tax Appeals, it was held that a note which had been charged off was no more worthless than other unsecured notes of the bankrupt debtor, on all of which a 19 per cent. dividend was ultimately paid, which dividend was anticipated in 1920. Under these circumstances it was held that no justification existed for the charging off of the note as worthless. There was another note concerning which the Committee said:

"The Committee is of the opinion that surrounding and attending circumstances existing at the end of 1920 may fairly be said to have indicated that the unsecured note was worthless and that the amount thereof should be allowed as a deduction in computing appellant's taxable income."

In A. R. R. 7895, cited by defendant, the estate was in bankruptcy, and it was estimated that the creditors would receive 25 per cent. of their claims, whereupon the taxpayer charged off in that year 75 per cent. of the claim. Under these circumstances it was held that the debt was not worthless, nor was it possible under the circumstances to charge it down to a nominal amount. The Committee, citing the act, held that the debt must be ascertained to be worthless and charged off. In this case, however, the Committee held further that, where an indebtedness is ascertained to be worthless, or of a merely nominal value, the regulations recognize that it is unnecessary to go through the formality of a receivership, or to wait until bankruptcy proceedings are terminated, before charging off the debt and taking same as a deduction from income. In the case before them, however, they held that the debt was not worthless, and hence it was not possible under the circumstances to legally claim credit.

It seems to the court that it could hardly fairly be said here that this was an attempt on the part of the taxpayer to charge off a part of a debt. It is true there was a common creditor. The indebtedness arose at different times and under different circumstances, mainly, moneys advanced in large amounts at different times. A portion of the account was represented by notes, while the part charged off was strictly an open account. While these two classes of indebtedness may be said legally to stand on a parity, as a matter of fact they do not stand on the same footing. Concerning the open account, no action of the company recognizing the correctness of the account was at

any time taken, while, in the other case, the debt has been fully recognized and the company's obligations for the payment were deliberately executed and delivered. The company by its act placed these two classes of indebtedness in a different situation, different as to proof in case action was brought. The plaintiff contends, and with much apparent show of truth, that the whole indebtedness represented by the notes and open account was worthless, but that he chose under the circumstances, rather than to relieve himself of his entire tax liability, to charge off simply the open account.

Unless legally compelled to do so, I would hesitate to penalize the plaintiff by refusing the credit which he seems entitled to legally, because he did not make a greater claim to which he might have been entitled.

[4] Nor can I sustain the defendant's third position, that, since plaintiff by stock ownership owned and controlled the Selden Company and the Walker Chemical Company, he cannot charge off as a bad account any indebtedness due him from either company until he had, by legal action, demonstrated the value or lack of value of such account. The plaintiff seems to have been engaged, through the medium of the two companies in question, in a perfectly legitimate enterprise, induced to do so, perhaps, by the necessities of the United States for the particular chemical product, of which the government stood greatly in need. Not the slightest bad faith appears anywhere in the case; everything that was possible to do at that time the plaintiff did, hazarding his private fortune to make the business a success. I can see nothing in the situation which should deprive him of the benefits of the statute in question.

The plaintiff is therefore entitled to judgment in the sum of $10,074.61, with interest from the date the same was paid. A formal order for judgment in accordance with this opinion may be presented.