**REDFIELD v. EATON, Collector of Internal Revenue.**

**No. 3488.**

District Court, D. Connecticut.

Nov. 13, 1931.

Wright, Hirschberg & Pettengill of Greenwich, Conn., for plaintiff.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and S. E. Blackham, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and John Buckley, U. S. Dist. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

HINCKS, District Judge.

In this case the plaintiff claims recovery of tax assessed upon his income without deduction for personal loans aggregating $3,113, which he claims to have made in part in 1926 and in part in 1927, and which he claims to have charged off as worthless in 1927. The

loans were shown as deductions on his return; were disallowed by the Commissioner and assessed against the plaintiff, resulting in an additional tax amounting to $418.87. This amount was exacted from the plaintiff together with interest thereon in the amount of $53.59, and paid by the plaintiff on May 26, 1930.

The Revenue Act of 1926 provides:

"Sec. 214(a) In computing net income there shall be allowed as deductions:

"(1) * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year. * * *" (26 USCA § 955(a) (7).

It may be observed at the outset that the defendant makes no claim that the transactions in question were not deductible because not arising out of the plaintiff's business. Indeed, there would seem to be no room for such a contention. Other clauses of this section, not quoted above, carefully specify that certain of the allowable deductions therein set forth are limited to transactions connected with "trade or business" or to transactions "entered into for profit." No such limitation is attached to deductions for worthless debts. Obviously no such limitation was within the intent of Congress.

And so here the only issue is one of fact, viz., whether the amount claimed by the plaintiff as a deduction from his gross income consisted of sums actually loaned, and, if so, whether the same were ascertained to be worthless and actually charged off by the plaintiff during the taxable year.

The plaintiff is a reputable lawyer residing in this district and practicing in New York City. That he is a lawyer, I find from his own testimony. That he is a reputable lawyer, I find from the impression that he gave, as a witness, of being candid, fair, accurate, and patient; also from the complete absence of evidence even tending to impeach his credibility.

There was no evidence whatever to contradict the plaintiff's direct testimony that the several advances which he claimed as loans were actually made and never repaid. And such I find to have been the fact.

The defendant, however, claims that on the evidence the court should find that the several transactions were in effect gifts, rather than loans. The claim necessitates a separate statement of each transaction.

In the Crawford transaction, the plaintiff advanced $80 to an old friend, not related by blood or marriage, upon her representation of a temporary need. At the time the recipient of the loan had regular employment at $60 a week. This employment she shortly thereafter lost, and was not thereafter employed until long after the close of the taxable year. With knowledge of her lack of employment, the plaintiff charged off the loan during the taxable year. Certainly there is nothing in this evidence to indicate that the transaction was a gift, and I have no difficulty in finding that it was in fact a loan, and ascertained to be worthless and charged off during the taxable year.

In February, 1927, one Willis, who was a client of the plaintiff and engaged in business, requested a loan of the plaintiff of $150 to meet her pay roll, representing that she would repay it very shortly. She offered the plaintiff a note. This the plaintiff declined, but advanced the money, believing that her business was in sound condition. Shortly thereafter, however, the business failed, and Mrs. Willis has had no business since. On these facts, also, it seems too clear for argument that the transaction was in fact a loan. To be sure, it may not have been a wise loan, but the law does not say nor does it contemplate that only debts wisely contracted are deductible. And it is equally clear from the evidence that the plaintiff charged the same off during the year.

During the year 1926 to 1927 the plaintiff made numerous advances aggregating $1,433 to one Rita Allen. Until shortly before the period of these advances, Miss Allen, who was an actress, had had profitable employment on the stage. Shortly prior to these advances, her play terminated, and she has had no regular employment since. Here, again, there is nothing whatever in the evidence to indicate that the transaction was other than a loan. To be sure, the plaintiff testified that, when the loan was sought, Miss Allen had stated that she would repay him as soon as she got a job. The defendant suggests that because, on the evidence, she has never since had regular employment, the loan, if it was a loan, has never become payable, and hence could not properly be charged off in the year 1927. The contention, however, is so technical as to deserve little consideration. Obviously, under these facts, the real arrangement was that the debt should be repaid within a reasonable time. The possibility of future employment was mentioned, not as a formal condition precedent to the maturity of the loan, but merely as a consideration which might lead the plaintiff to make the loan.

It further appeared that in 1931 the plaintiff, knowing that other creditors were taking action against Miss Allen, reduced his claim to a judgment, on which execution was returned unsatisfied. From this fact the defendant asks the court to find that the loan was not in fact ascertained to be worthless and charged off during the taxable year. If this claim is sound, it would necessarily follow that no debt could be charged off and constitute a valid deduction for income tax purposes until outlawed. Such is not the law. The correct view is well stated in the case of Selden v. Heiner (D. C.) 12 F.(2d) 474. In any event, that the plaintiff thought it worth while to preserve the obligation in 1931 is a fact of little weight bearing on its worthlessness in the taxable year 1927. The subsequent satisfaction of a debt would seem to be admissible as tending to disprove its earlier worthlessness under the holding of American Trust Co. v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 47. But I find no case which goes so far as to hold that the mere preservation of the legal obligation has any such force.

Indeed, if the plaintiff had failed to charge off the debt in 1927, it might well be that he would have found himself precluded ever thereafter to claim the deduction. For in Avery v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 6, 7, 55 A. L. R. 1277, a case cited by the defendant, the court says: "The reasonable interpretation of the law is that, in order to secure a deduction of worthless debts, they must be charged off in the year they are ascertained to be worthless. A man is presumed to know what a reasonable person ought to know from facts brought to his attention. A taxpayer should not be permitted to close his eyes to the obvious, and to carry accounts on his books as good when in fact they are worthless, and then deduct them in a year subsequent to the one in which he must be presumed to have ascertained their worthlessness. To do so would enable him to withhold deductions in his less prosperous years, when they would have little effect in reducing his taxes, and then to apply the accumulation at another time to the detriment of the fisc. This would defeat the intent and purpose of the law."

Thus, as the situation stands, the defendant contends, without justification, I hold, that the plaintiff claimed the deduction too soon. But under the authority just quoted, if the plaintiff had delayed his claim for deduction to a later year, the defendant would doubtless have succeeded in the contention that the claim came too late. The court, notwithstanding the cordiality of the invitation, must decline to join in the game of hide and seek.

The plaintiff also claims a loan of $1,400, made in installments, to his sister, Edith Cooper, beginning in December, 1926, and continuing until August, 1927. Mrs. Cooper had for a considerable time been ill with tuberculosis, her husband was then out of employment, and she was without means excepting certain bonds long since received from the estate of their father. In asking the plaintiff for these loans, which were needed to defray doctors' bills and living expenses, Mrs. Cooper gave him to understand that she still owned these bonds, but was reluctant to sell them because of unfavorable market conditions. After the loans had been made, she went to Arizona for her health, accompanied by her husband, but died in September, 1927. After her death, the defendant found for the first time that she had theretofore disposed of her bonds. Her estate was wholly without assets. Consequently, the plaintiff charged off the loans as deductions against his 1927 income.

The government claimed that these facts were in conflict with prior affidavits which the plaintiff had made and given to officials of the Treasury Department. Careful examination of these affidavits, however, discloses no material inconsistency whatever, and I find the plaintiff's testimony with respect to this transaction true in every material respect. Consequently, I find that this transaction also was a loan and not a gift.

To be sure, the relationship between the parties was such as to subject the nature of the transaction to close scrutiny. It may be observed, however, that the plaintiff was under no legal obligation for the support of his sister or for her medical expenses. Nor does it appear that at the time of the transaction in question she was a member of his household. Under all the circumstances, in making the advances the plaintiff had reason to believe that they could and would be repaid by her husband or else eventually satisfied out of her bonds. No direct evidence whatever was offered to show that the advances were intended as gifts, and there is nothing in the law which, under the circumstances of this case, raises a presumption that the transactions were gifts.

The final item entering into the plaintiff's claim is a transaction involving $50 advanced to Mr. Cooper to enable him to attend his wife's funeral in September, 1927. It is true that at the time Mr. Cooper was without employment, and his health had been

shaken by his wife's death. Under the evidence, however, the plaintiff at the time was not without grounds for expecting that Cooper would eventually become re-established. However, by the close of the year, it appeared definitely that Cooper's health and continued unemployment was such that the plaintiff was justified in charging off the debt as worthless.

On the facts, therefore, I find that the plaintiff has sustained the burden of proof on all the disputed allegations of the complaint.

Owing partly to the fact that counsel have thought it worth while to come from Washington to defend a case involving less than $500, I have been at extreme pains scrupulously to examine every authority cited for the defendant. I am referred to a number of decisions by the Board of Tax Appeals which on other facts hold that other transactions were other than bona fide loans. Necessarily, such cases can be of little aid in the determination of the factual situation presented here.

The judicial decisions which have been cited require no revision of the views expressed above. Most of them deal with the "presumption" that the decision of the Commissioner in denying the claim for refund was correct. No one doubts that his decision is sufficient basis for the additional assessment and levy; thus casting on a plaintiff, who brings the controversy into court, the burden of proof upon all material allegations of the complaint. But that the Commissioner's decision, resting on evidence not presented to the court—in this case the defendant offered not a single witness—has the quality of probative evidence in determining the preponderance of evidence, is a proposition supported neither by authority nor reason.

It is accordingly adjudged that the plaintiff recover of the defendant the sum of $472.46, together with interest thereon from May 26, 1930, and costs.