### MOORE et al. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 47.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1939.

Neil Burkinshaw and Edgar J. Goodrich, both of Washington, D. C. (Guggenheimer & Untermyer, of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The petitioner's decedent, on March 16, 1938, filed a petition for review of the decision of the United States Board of Tax Appeals, determining against her a deficiency in income tax for the calendar year 1931 of $7260.62. She died on July 30, 1938 and her executor appointed under her will continued the review.

Between June 16, 1926 and November 2, 1931, decedent made cash loans to the Oil Jack Co., Inc., aggregating $246,000. Promissory notes were delivered to her for this sum. They were time notes but later, upon renewal, were made demand notes. The loans were carried on the books of the corporation as due the taxpayer with interest accruing thereon. The Oil Jack Company was unsuccessful in business. It paid no dividends nor did it show profit in any year of its existence. But decedent continued to make further advances upon the representations of her son and an inventor, as to the promise of ultimate financial success of the business. Both her son and the inventor were officers of the corporation and actively engaged in carrying on its business. The business was characterized by national advertising and by quantity production of the devices constructed under the patents. The taxpayer, in good faith, expected the company to be successful. Her son and the officers of the corporation also believed in its ultimate success. It was thought that the product would be sold widely and revolutionize the jack business.

The decedent was eighty years old in 1931, in feeble and frail condition of health; she had been an invalid for some years. She had no business experience, relying upon the judgment and representations of her son as to the eventual success of the business, and expected to be repaid in full by the corporation. Some bankers told her she had made a bad investment. On November 6, 1931, she received the advice and report of a new financial advisor, the present executor, an attorney and trust officer of a bank. After an examination of the affairs of the corporation, its books, records and prospects of business, he reported to the decedent that her loans were worthless and uncollectable. On December 11, 1931, the Oil Jack Company, Inc., was dissolved. Thereafter on December 26, 1931 the Oil-jack Manufacturing Company, a New Jersey corporation, was organized and took over its assets, consisting of machinery valued at less than $25,000, but it did not assume the debts owing to the decedent, then aggregating $284,439.68. Decedent exchanged her 500

shares of preferred stock in the old corporation for 120 shares of preferred and 105 shares of common stock in the new corporation.

In her income tax return for 1931 decedent deducted as bad debts $284,439.68, being the principal and accrued interest of her aggregate loans to the corporation. Later the amount of interest was withdrawn from the claimed deduction.

It is apparent that the decedent was interested in the business for investment purposes, and not solely to help her son establish the business. She expected success in the business and was advised that it would be successful. She owned stock as well as loaned it money. When she made her investment she was justified, in her circumstances, in believing that she would be repaid. The Revenue Act of 1928, Ch. 852, § 23(j), 45 Stat. 791, 26 U.S.C.A. § 23(j), allows a deduction for debts "ascertained to be worthless and charged off within the taxable year." And the question presented here is whether the taxpayer did, in good faith, ascertain these loans to be worthless in 1931.

Petitioner seeks to have this Court adopt a subjective treatment of the facts underlying the exercise of taxpayer's judgment; respondent asserts the other extreme, primarily an objective analysis. Under the former we would examine only the good faith and honesty of the taxpayer; under the latter, the primary inquiry would only be whether taxpayer's judgment would be concurred in by the reasonable judgment of a prudent business man. The board decided that "ascertained to be worthless" involved two factors: first, actual worthlessness, or at least a state of fact from which a prudent business man would infer this ultimate fact, and second, actual knowledge of these facts obtained in the taxable year by the taxpayer or which she might have obtained had she used ordinary business judgment. Thus the board adopted respondent's theory. We think that both theories are incorrect.

■ There is in the decisions no real conflict as to the applicable rule of law, but because of the changing factual bases of the cases, conflicts seem to present themselves. In tax cases, no hard and fast rule may be laid down, and each case must be decided on its own facts. American Trust Co. v. Com'r, 9 Cir., 31 F.2d 47, 49. The first inquiry is whether or not the taxpayer did in fact ascertain a debt to be worthless in the year for which deduction is sought; then, whether the taxpayer acted in good faith. To answer the second question, some courts have used the test of the prudent business man; if a prudent business man would have decided as the taxpayer did, then the taxpayer acted honestly. Peyton Du-Pont Securities Co. v. Com'r, 2 Cir., 66 F.2d 718. Occasionally, too, the prudent business man test is applied in the first inquiry, so that if the taxpayer did not make the same investigation of the facts upon which to base his decision that the debt was worthless as a prudent business man would have made, it is held that the taxpayer did not "ascertain" the worthlessness of the debt. Sherman & Bryan v. Blair, 2 Cir., 35 F.2d 713, 715. But such variations do not alter the rule, and any deviations which might indicate a greater emphasis upon objectivity of approach were required by the exigencies of the cases.

■ The board relied upon Avery v. Com'r, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277, but it does not alter the rule applicable. It expresses the necessity of insisting upon good faith of the taxpayer's claim of deduction. Good faith demands that "A taxpayer should not be permitted to close his eyes to the obvious, and to carry accounts on his books as good when in fact they are worthless. * * * This would defeat the intent and purpose of the law." [Page 7.] As long as it sufficiently appears that the taxpayer did not act with a view to "defeat the intent and purpose" of the tax law, the good faith requirement is satisfied.

■■ In this record, it does not appear that any facts indicated to the taxpayer the worthlessness of these loans prior to November 6, 1931, when Moore made his report to the decedent. While it is true that she testified that some bankers had advised her that her loans were foolish, and that she should be more careful, these were conservative bankers' opinions, and not accompanied by an investigation upon which she could base a judgment different from that she had already formed. These opinions were but expressions of the bankers' lack of faith in the enterprise, and in her son's ability to succeed. Whatever may have been Moore's private apprehensions prior to November 6, 1931 as to the worthlessness of the loans, it is not shown that these were made clear to the taxpayer prior to that date. Thus, even under the objective approach, suggested in the Avery Case, it sufficiently appears from the record

that the taxpayer first "ascertained", from the facts in her possession, that the loans were worthless in 1931. In making this determination, the taxpayer must be allowed a fair degree of latitude. Blair v. Com'r, 2 Cir., 91 F.2d 992. And it is the taxpayer, not another, who is to make this determination, for it is in terms of making a taxpayer's decision that the statute speaks. Selden v. Heiner, D.C.W.D.Pa., 12 F.2d 474. Even by the purely objective test, applied by the board, a reasonable person in taxpayer's circumstances could not have been required to act differently. It is clear that her advisors in making these loans prior to 1931 were decedent's son and the inventor of the hydraulic oil jack. She relied solely upon their representations and advice as to the nature of the new venture, its financial requirements and prospects for eventual success. Possibly she was informed of the experimental and speculative nature of the business. But such experiences have been had by financiers of sound judgment. If the undertaking was in good faith, the result would be the same. Nor does it change the result that she was the only financial backer of the corporation and that her loans were the permissive means of the continuance of the enterprise, during its years of development. The statute does not provide that it is only debts, wisely contracted, which are deductible. Redfield v. Eaton, D.C.Conn., 53 F.2d 693. The fact that the business had experimental and promotional features in its venture justified the decedent in believing that it might actually turn out to be very successful and that she would obtain the repayment of her loans at any time up to the time of dissolution of the corporation.

 In ascertaining the worthlessness of a debt, sometimes the processes of the law declare a debt to be worthless, as by an unsatisfied execution of a judgment, discharge in bankruptcy, and the like; but even these unequivocal declarations of the law are not binding on the taxpayer, and he may ascertain a debt to be worthless and then several years later reduce it to judgment upon which execution is returned unsatisfied. His later action is not conclusive as showing that his former was in bad faith. Sabath v. Com'r, 7 Cir., 100 F.2d 569. The real question is not when did the debt become worthless, but when did the taxpayer ascertain it to be worthless. Jones v. Com'r, 7 Cir., 38 F.2d 550. In determining good faith, it is only the taxpayer's information

at the time of the loan and the deduction which is to be considered; for in the light of subsequent events, it may be safe to ascertain that the debt was worthless before 1931. Jones v. Com'r, supra. There is no absolute duty on the taxpayer to ascertain worthlessness, at her peril, during the same year when the debt did in fact become uncollectible. Duffin v. Lucas, 6 Cir., 55 F.2d 786; Helvering v. Ames, 8 Cir., 71 F.2d 939, 943.

The debt was not assumed by the new corporation and the machinery transferred was worth much less than the $25,000 paid for it. There was no asset in the borrower's possession which could give the taxpayer hope for payment of the debt or any part of it when charged off in November 1931. There was no reasonable expectation of payment.

Determination reversed.