## Case No. 15,172.

### UNITED STATES v. FROST.

[9 Int. Rev. Rec. 41; 16 Pittsb. Leg. J. 196; 1 Chi. Leg. News, 129.]

District Court, N. D. Illinois. Jan. Term, 1869.

INTERNAL REVENUE—INCOME TAX—FALSE RETURNS —EVIDENCES OF DEBT.

1. Promissory notes, book accounts, etc., due during the year, are the evidences of debts.

2. Whether or not they are gains, profits or income for that year within the meaning of the internal revenue law, depends upon their value intrinsically or their convertibility into money, property or available assets. If they have only a nominal, and not a real value or convertible quality, and a man has realized nothing from them, and, therefore, does not return them as a part of his income, because he fairly and honestly believes they are not real gains or profits, he cannot be convicted of an untrue return.

The defendant [William E. Frost] was indicted for making a false return of his income for the year 1866, under the following state of facts: The defendant was a partner of William E. Hall (who was also indicted) and had returned as income for that year $10.075. The books of the firm showed that there had been entered as the profits of the business for that year $31,-295.70, and to the credit of the defendant one-half of that sum, $15.647.85. There was a reduced assessment made against the defendant by the assessor of $3.730.33 (the original assessment being $5,568.84) on which the defendant had paid the tax—the assessor claiming the tax should be paid on all debts and accounts that were not actually carried to profit and loss. It appeared on the trial that the profits entered in the books were made up by adding to the assets of the preceding year all debts and accounts whether good or bad, as well as the receipts of the year 1866, and thus the profits were not all real, but some of them only nominal. When the defendant made up his income returns he included all debts which he considered absolutely good, and threw out those that he regarded as bad, doubtful or comparatively worthless, and thus accounted for the difference between the amount of profits on his books and his

returns. It was clearly established that this was done because the defendant did not treat or consider such bad or doubtful debts as real gains or profits.

THE COURT, thereupon, instructed the jury upon the law of the case to the following effect: It might be true in many cases where a man made a charge on his books for debts due as the result of the year's business, they would constitute assets, and come within the definition of gains or profits. For example, instead of money, he might receive promissory notes. bills of exchange, bonds or mortgages, or different kinds of securities, and these, if good. might properly become a part of his income. Even treasury notes and national bank notes were not actually money, but only the representatives of money, though treated as such by the commercial world, and with them the government is carried on and alone supported, except by what gold is received through the customs. Many kinds of securities—as bonds of the United States, for instance— are considered as money or available assets. because convertible at once into money, and therefore when any of these are received as the result of a year's business, they are legitimately a part of a year's income. The rule would be the same, of course, if instead of them, it were property real or personal. In all these cases there are real gains or profits. But when a man, at the end of the year found upon his books as amounts charged without having actually received any portion of the same or had bills receivable unavailable, it seemed to be a misnomer to call them gains or profits, which were not, and never might be realized. It was hard, certainly, a man should be convicted for a difference of opinion between himself and the government officer, as to whether he should, in his income returns, give in bad or doubtful debts. The rule of the bureau was understood to be that debts due in the year were to be included as income unless known to be absolutely worthless. It was often a difficult question to decide when that was so, particularly in this western country, and it gave too great a discretion to the party making the return. If a man has invested all his capital in starting a business, and his books at the end of the year showed large nominal profits in accounts and bills receivable, he might not in fact have the money to pay the government tax on those profits. Take another illustration: A man might have a promissory note of a thousand dollars, which was called good when he made his return, and thus pay a tax on it as so much income, and, in fact, it might be all the time worthless, and he would be obliged to pay for what he thought was good, but was not really so. It is said, indeed, that the practice is to allow deductions to be made from the succeeding income returns, but suppose a man never after has a taxa-

ble income, then he never is reimbursed. There had always seemed to be something wrong in the practical operation of this part of the statute; for while it would be proper to include as a part of a man's income what is treated as, or convertible into money, there seemed an injustice in making him pay a tax on book accounts or notes uncollected, and when it was uncertain whether or not they ever could be collected. But, of course, if a man should have good accounts on his books, which, if instead of collecting, he permitted to remain, or if they were real gains or profits, he could not evade the payment of what is justly due the government. The principle would be the same applied to any other kind of evidence of debt, as promissory notes, bills of exchange, etc. No one was permitted to evade the law when he did not realize merely because he would not. But the true rule would seem to be to impose and collect the tax on real gains, profits or income, and not on what was merely nominal. The law could certainly not require the payment of something for nothing.

These were some of the general views of the court on the law of this case, but whether they were all correct or not, for it was confessedly a difficult subject to treat with entire accuracy, THE COURT was of the opinion that the facts would not justify a conviction, and the district attorney acquiescing, the defendant was acquitted by the jury.

THE COURT, in commenting upon the revenue laws, in this case, said: The language of the law is that there shall be levied and collected a tax of five per cent. on the amount derived—over one thousand dollars—from the annual gains, profits and income of every person. The law declares what shall be included in estimating the gains, profit and income of a person; as income derived from interest on notes and other securities of the United States; profits realized from sale of lands, etc.; interest received or accrued on notes, bonds, etc., bearing interest, whether paid or not, if good and collectible. This seems to be the only place where the law speaks distinctively of interest accruing, but not paid. The law then mentions the amount of premium on gold and coupons, and of sales of the farm, except, etc.; and then adds: "All other gains and profits derived from any source whatever, and the share of any person in the gains and profits of all companies, whether divided or otherwise," with certain exceptions. The law, then, in giving the exemption of a thousand dollars, declares that there shall also be deducted the taxes paid within the year; certain losses actually sustained; the amount actually paid for rent of the house; the amount actually paid for repairs, etc. Now in all these deductions allowed the statute seems careful to exclude the amount due for taxes for labor, for rent or for repairs, but requires that they shall

be paid. Among the various deductions allowed are "debts ascertained to be worthless." This is the only place where this word debts is used, and it may thence be claimed that debts not ascertained to be worthless are to be included as income, but it is clear, I think, that the debts must be gains or profits, and if they are not they are no part of a man's taxable income. The language is. "ascertained to be worthless." By whom or how? The law is silent on this important point, and therefore there must be a discretion given to the person making his returns, and if that discretion is used fairly and honestly there would seem to be no just ground of complaint. It certainly can scarcely be contended that every debt must be ascertained to be worthless by a suit at law, or in equity, for that would be impracticable, and therefore such cannot be the meaning of the law. It is undoubtedly very difficult to lay down any rule of universal application to this class of cases, and yet the want of precision in the law may have led to this prosecution, and may lead to others, and, perhaps, on the whole, it would be better to give, by law, a clearer and simpler definition than now exists of the terms "gains, profits and income."