THE BETTENDORF COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68246.   Promulgated March 10, 1936.

*H. W. Welsch*, Esq., and *A. J. Kreuger*, Esq., for the petitioner.
*C. R. Marshall*, Esq., for the respondent.

OPINION.

MELLOTT: The petitioner appeals from a determination by the respondent of a deficiency in income tax for the calendar years 1929 and 1930 in the amounts, respectively, of $6,726.94 and $8,519.84,

and claims an overpayment of not less than $124.37 for the year 1930.

Two issues are raised by the pleadings, but upon the second, which relates to certain expense items incurred and paid by petitioner in 1930, no evidence was submitted. The first issue, and the only one submitted to us, is whether or not respondent erred in increasing petitioner's taxable income for the years 1929 and 1930 by including therein interest admittedly due from the Zimmerman Steel Co. and the Westco Pump Corporation for those years, but not accrued by petitioner upon its books or reported in its returns of income.

All of the facts, which were stipulated, have been carefully considered. The following summary of them, however, will be sufficient for present purposes.

The petitioner is a corporation duly organized and existing under the laws of the State of Iowa. It was incorporated in 1913, and maintained its principal office and place of business at Bettendorf, Iowa. It kept its books, records, and accounts on the accrual basis and its income tax returns, which were duly filed, were made upon the same basis.

J. W. Bettendorf—now deceased—was an officer and the principal stockholder of three corporations, the Bettendorf Co., petitioner herein, which will hereinafter be referred to as "petitioner"; the Zimmerman Steel Co., which will hereinafter be referred to as the "Steel Co."; and the Westco Pump Corporation, which was formerly the Westco-Chippewa Pump Co., which in turn was the successor on reorganization of the Western Pump Co., all of which will hereinafter be referred to as the "Pump Co." During the taxable years his interests in said corporations were as follows:

Petitioner—"An officer and the principal stockholder" (Stip. 13).

Steel Co.—1855 of a total of 3425 shares common—84.534 in 1929 and 139.515 in 1930 of a total of 2232.325 shares preferred.

Pump Co.—6331 of total 9863 shares common and 440 of a total of 1000 shares preferred (31).

While the businesses of the three corporations were apparently somewhat related, the corporations were not affiliated or subsidiary, each maintaining its distinct and separate entity. Both the Steel Co. and Pump Co., however, borrowed extensively from the petitioner, and this controversy arises over the interest due it upon such loans. Petitioner, contending that such interest "should not be included in its gross income for those (the taxable) years for the reason that such interest was uncollectible, and for the further reason that there was no assurance that it would ever be received" (quotation from its brief), did not report such interest; but the respondent added the amount, admittedly due, to its income and determined the deficiency.

The following table shows the situation during the period from 1923 to 1930 with respect to all interest due to petitioner from the Steel Co. and Pump Co.

| | Steel Co. | | Pump Co. | |
| --- | --- | --- | --- | --- |
| | Admitted to be due | Reported by petitioner in its income tax return | Admitted to be due | Reported by petitioner in its income tax return |
| 1923 | $3,692.61 | $3,692.61 | $5,341.43 | $5,341.43 |
| 1924 | 7,540.90 | 7,540.90 | 8,252.49 | 8,252.49 |
| 1925 | 17,608.70 | 17,608.70 | 15,160.81 | 15,160.81 |
| 1926 | 23,885.83 | 23,885.83 | 22,952.27 | 22,952.27 |
| 1927 | 27,761.98 | 1.00 | 27,845.22 | 533.15 |
| 1928 | 29,452.53 | 1.00 | 29,349.86 | 1.00 |
| 1929 | 30,044.10 | 1.00 | 31,110.85 | 1.00 |
| 1930 | 29,737.56 | 1.00 | 32,668.53 | 1.00 |

The amounts appearing in the above table under the heading "admitted to be due", were accrued on the books of the Steel Co. and Pump Co., deducted by them on their income tax returns, and the deductions were allowed by the revenue department. Petitioner, however, having accepted notes of the companies for the years 1927 to 1930 in lesser amounts ($1), accrued upon its accounts said lesser amounts and reported them as income. Respondent, asserting that the same amounts which were deducted by Steel Co. and Pump Co. should have been reported by petitioner as income accrued, determined the deficiency by including them, as follows:

| | 1929 | 1930 |
| --- | --- | --- |
| Steel Co | $30,043.10 | $29,736.56 |
| Pump Co | 31,109.85 | 32,667.53 |
| Total | 61,152.95 | 62,404.09 |

Petitioner, admitting that it changed its method of treating the interest due from Steel Co. and Pump Co. in 1927, and admitting that the amounts due are as shown above, seeks to justify its failure to report such amounts for taxation, claiming, as such justification, the history of said companies as shown in detail in the stipulation. We shall therefore advert with some particularity to such history.

Steel Co. was first incorporated in 1914. In 1915 J. W. Bettendorf purchased 250 shares of its capital stock. In 1916 he purchased some of its preferred stock. In 1919, by action of its creditors, the company was placed in the hands of a creditors' committee and Bettendorf was appointed as its managing director, in which position he continued until 1923. A reorganization and recapitalization occurred in that year, after which Bettendorf was elected president, and he held such office until his death, which occurred in 1933.

After the reorganization of the Steel Co. it operated at a loss for the years 1923 to 1927, both inclusive, but during the years 1928, 1929, and 1930 it operated at a profit. Its record of profits and losses for said years is, as follows:

Deficit, 1922_____ $28, 457. 87
Loss:
    1923_____ 46, 589. 03
    1924_____ 101, 599. 68
    1925_____ 147, 197. 35
    1926_____ 45, 027. 06
    1927_____ 55, 282. 60
Profit:
    1928_____ 35, 998. 98
    1929_____ 108, 097. 25
    1930_____ 1, 496. 53

Its net operating deficit December 31, 1928, was $388,154.61, December 31, 1929, $280,057.36, and December 31, 1930, $278,560.83.

During the years 1921 to 1930, inclusive, petitioner made various cash advances to Steel Co. and charged against it various items of interest. Certain payments upon account were received and there is shown in the following table a summary by years of all such transactions.

| Calendar year | Description of transaction | | Amount |
|---|---|---|---|
| 1921<br>1922 | } Cash advances to Steel Co. on open account_____ | | { $1, 000. 00<br>57, 000. 00 |
| | Total_____ | | 58, 000. 00 |
| 1922 | Cash received from Steel Co._____ | $1, 000. 00 | |
| 1922 | Payment received by offsetting accounts receivable against accounts payable_____ | 4, 508. 73 | |
| | | | 5, 508. 73 |
| 1922 | Open account balance at end of year_____ | | 52, 491. 27 |
| 1923 | Cash advances to Steel Co. on open account_____ | | 106, 748. 22 |
| 1923 | Interest charged to Zimmerman Steel Co. on open account_____ | | 3, 692. 61 |
| | Total_____ | | 162, 932. 10 |
| 1923 | Cash received from Steel Co._____ | 15, 000. 00 | |
| 1923 | Payment received by offsetting accounts receivable against accounts payable_____ | 6, 739. 49 | |
| 1923 | Credit to Steel Co. for amount assumed by J. W. Bettendorf_____ | 90, 540. 00 | |
| | | | 112, 279. 49 |
| 1923 | Open account balance at end of year_____ | | 50, 652. 61 |
| 1924 | Cash advances to Steel Co. on open account_____ | | 164, 888. 29 |
| 1924 | Balance at end of year—notes receivable taken in 1924 for entire amount_____ | | 215, 540. 90 |
| 1925 | Notes receivable for cash advanced to Steel Co._____ | | 141, 037. 35 |
| 1925 | Notes receivable for interest charged to Steel Co._____ | | 17, 608. 70 |
| 1926 | Notes receivable for cash advanced to Steel Co._____ | | 42, 583. 93 |
| 1926 | Notes receivable for interest charged to Steel Co._____ | | 23, 885. 83 |
| 1927 | Notes receivable for cash advanced to Steel Co._____ | | 32, 500. 00 |
| 1927 | Notes receivable for interest charged to Steel Co._____ | | 1. 00 |
| 1928 | Notes receivable for interest charged to Steel Co._____ | | 1. 00 |
| 1928 | Unpaid notes receivable at end of year_____ | | 473, 158. 71 |
| 1929 | Notes receivable for interest charged to Steel Co._____ | | 1. 00 |
| | Total_____ | | 473, 159. 71 |
| 1929 | Cash received from Steel Co._____ | | 44, 829. 35 |
| 1929 | Unpaid notes receivable at end of year_____ | | 428, 330. 36 |
| 1930 | Note receivable for interest charged Steel Co._____ | | 1. 00 |
| 1930 | Unpaid notes receivable at end of year_____ | | 428, 331. 36 |

76

Aside from the notes receivable due from the Steel Co., petitioner had no financial interest in said company prior to or during the taxable years. The notes were demand notes, bearing interest at rates of 6 percent and 5 percent, but were unsecured except as hereinafter shown.

In addition to the amounts borrowed from petitioner, Steel Co. also borrowed from banks, its notes payable to banks aggregating during the years in question, the following: 1928, $130,000; 1929, $82,000; and 1930, $82,000.

It paid the banks upon its indebtedness the sum of $48,000 in 1929, and during the same year paid petitioner the sum of $44,829.35 upon its notes. While no written evidence could be found guaranteeing Steel Co.'s notes to banks, it is apparent, and we find as a fact, that J. W. Bettendorf had orally agreed that such notes should be paid ahead of the notes due petitioner. On September 21, 1931, petitioner paid the $82,000 due from Steel Co. to banks, and received in consideration therefor Steel Co.'s note in that amount. (See schedule above.)

While petitioner's notes from Steel Co. were unsecured during a portion of the taxable period, on December 29, 1929, two Guaranty Life Insurance Co. policies for $100,000 each, on the life of Arthur K. Reading, general manager, were secured by and for the benefit of Steel Co. and assigned to petititoner on January 7, 1930, as security for said notes. The policies had no cash surrender value until after payment of the third annual premium, due in December 1931. The insured named in said policies is still living.

An additional circumstance bearing upon the interest due from the Steel Co. to petitioner is reflected in paragraphs 11 and 12 of the stipulation, which we set out herein, substituting the name "Steel Co." for the name "Zimmerman Co." therein contained.

(11) The total sales of "Steel Co." for the years 1919 to 1933, inclusive, segregated to show sales to one customer, International Harvester Company, and to all other customers, were as follows:

| Year | Total sales | Sales to International Harvester Company included in total sales | Sales to others | Year | Total sales | Sales to International Harvester Company included in total sales | Sales to others |
|---|---|---|---|---|---|---|---|
| 1910 | $429,416.31 | | $429,416.31 | 1927 | $205,400.65 | $109,651.29 | $95,749.36 |
| 1920 | 713,970.76 | | 713,970.76 | 1928 | 492,236.99 | 383,234.34 | 109,002.65 |
| 1921 | 70,962.72 | | 70,962.72 | 1929 | 587,530.85 | 422,118.78 | 165,412.07 |
| 1922 | 166,009.05 | | 166,009.05 | 1930 | 463,519.22 | 349,207.27 | 114,311.95 |
| 1923 | 314,780.15 | | 314,780.15 | 1931 | 135,191.03 | 73,886.49 | 61,304.54 |
| 1924 | 317,606.36 | | 317,606.36 | 1932 | 71,818.48 | 3,089.73 | 68,728.75 |
| 1925 | 491,137.72 | | 491,137.72 | 1933 | 115,766.74 | 15,680.39 | 100,086.35 |
| 1926 | 363,775.19 | $1,979.02 | 361,796.17 | | | | |

(12) During the years in which "Steel Co." received business from International Harvester Company, as set forth in (11) above, officers and employees of the latter company, using such business with "Steel Co." as a "lever" endeavored to sell pig iron (to be furnished by Wisconsin Steel Company, a subsidiary of International Harvester Company) to the Bettendorf Company (petitioner herein). As a result of negotiations between International Harvester Company, "Steel Co.", and the Bettendorf Company, the latter company purchased 1,000 tons of pig iron from Wisconsin Steel Company in June, 1930. This purchase was made to enable "Steel Co." to retain the business referred to above. Because of business conditions in 1930 and thereafter, the Bettendorf Company was unable to make further purchases from Wisconsin Steel Company. In the absence of such purchases, the officers of The Bettendorf Company and "Steel Co." were, during the taxable years, of the opinion that the business of "Steel Co." with International Harvester Company would be lost. The situation described above did result in the loss of most of the requirements of International Harvester Company, as indicated in (11) above. The reduction in volume of "Steel Co." sales to International Harvester Company was also produced by the general business depression which reduced the requirements of International Harvester Company for the kind of products produced by "Steel Co."

The principal assets of Steel Co. as shown in the balance sheet attached to the stipulation, consisted of plant property and equipment, accounts receivable, merchandise, and patents. Its liabilities and assets as per its books, in condensed form, were as follows:

|  | December 31, 1928 | December 31, 1929 | December 31, 1930 |
|---|---|---|---|
| **ASSETS** | | | |
| Cash | $3,319.42 | $14,074.76 | $19,488.76 |
| Other current assets | 93,995.70 | 117,510.27 | 81,357.11 |
| Plant property and equipment, less reserves for depreciation | 710,869.23 | 703,808.24 | 748,261.61 |
| Patents | 78,220.00 | 78,220.00 | 78,220.00 |
| Other assets | 2,091.58 | 1,733.68 | 12,420.50 |
| Total assets, per books | 888,495.93 | 915,346.95 | 939,747.98 |
| Debit balance in surplus (excess of liabilities plus capital stock over assets) | 388,154.61 | 277,135.21 | 278,560.83 |
| Total | 1,276,650.54 | 1,192,482.16 | 1,218,308.81 |
| **LIABILITIES** | | | |
| Preferred capital stock | 223,232.50 | 223,232.50 | 223,232.50 |
| Common capital stock | 342,500.00 | 342,500.00 | 342,500.00 |
| Bonds payable | 30,000.00 | 20,000.00 | 20,000.00 |
| Notes payable—The Bettendorf Company | 473,158.71 | 428,330.36 | 428,331.36 |
| Notes payable—banks | 130,000.00 | 82,000.00 | 82,000.00 |
| Other notes payable, accounts payable, accrued accounts, and miscellaneous | 20,546.82 | 96,419.30 | 122,244.95 |
| Total liabilities per books | 1,219,438.03 | 1,192,482.16 | 1,218,308.81 |
| Adjustment for accrued interest for years 1927 and 1928—Recorded on books in 1929 | 57,212.51 | | |
| Total | 1,276,650.54 | 1,192,482.16 | 1,218,308.81 |

The history of the Pump Co. is likewise set out with some particularity in the stipulation, but we shall set out herein only the substance of the stipulated facts.

Pump Co. was first incorporated in 1918, with its principal office and place of business at Moline, Ill. It acquired a license contract for the manufacture, use and sale of a new type rotary pump. The pump first produced failed to perform satisfactorily and it was necessary to conduct extensive experiments and to make extensive replacements of pumps sold to customers on approval, the money for which was obtained in large part by the issuance of capital stock and bonds. The stipulation does not disclose the relationship of petitioner and its stockholders with said Pump Co. during the early years of its existence, but merely recites that J. W. Bettendorf "became interested in" it in 1921, at which time he purchased some of its common stock. During that year, petitioner advanced to Pump Co. $86,061.50 and during the following year (1922) $102,503.79, taking its demand notes for said amounts.

In 1923 a new corporation was organized, which took over all the assets and liabilities of the old Pump Co. and the old company was liquidated. The new company issued common stock to the old stockholders for total cash of $117,500.

The Pump Co., like the Steel Co., operated at a loss after its reorganization, its record of profits and losses for the years 1923 to 1930 being as follows:

| Year: | Loss | Profit |
|---|---|---|
| 1923 | $25,586.01 | |
| 1924 | 83,292.70 | |
| 1925 | 39,734.78 | |
| 1926 | 36,423.08 | |
| 1927 | 22,857.53 | |
| 1928 | 18,324.81 | |
| 1929 | 32,660.12 | |
| 1930 | | $20,170.09 |

Its net operating deficit December 31, 1928, was $226,218.91, December 31, 1929, $258,879.03, and December 31, 1930, $238,708.94.

During the years 1921 to 1930, inclusive, petitioner made various cash advances to Pump Co. and charged against it various items of interest. Certain payments upon account were received and there is shown in the following table a summary by years of all such transactions:

| Calendar year | Description of transaction | Amount |
|---|---|---|
| 1921 | Cash advances to Westco Pump Corporation on open account | $86,061.50 |
| 1921 | Cash received from Westco Pump Corporation | 24,007.15 |
| 1921 | Open account balance at end of year | 62,054.35 |
| 1922 | Cash advances to Westco Pump Corporation on open account | 102,503.79 |
| 1922 | Open account balance at end of year | 164,558.14 |
| 1923 | Cash advances to Westco Pump Corporation on open account | 62,100.00 |
| 1923 | Interest charged Westco Pump Corporation on open account | 5,341.43 |
| | Total | 231,999.57 |
| 1923 | Bonds received from Westco Pump Corporation _____ $19,000.00 | |
| 1923 | Capital stock received from Westco Pump Corporation ____ 106,290.00 | 125,290.00 |
| 1923 | Open account balance at end of year | 106,709.57 |
| 1924 | Cash advances to Westco Pump Corporation on open account | 140,000.00 |
| 1924 | Interest charged Westco Pump Corporation on open account | 8,252.49 |
| | Total | 254,962.06 |
| 1924 | Capital stock received from Westco Pump Corporation | 45,000.00 |
| 1924 | Balance at end of year—Notes receivable taken for entire amount | 209,962.06 |
| 1925 | Notes receivable for cash advanced to Westco Pump Corporation | 104,321.75 |
| 1925 | Notes receivable for interest charged Westco Pump Corporation | 12,597.72 |
| 1926 | Notes receivable for cash advanced to Westco Pump Corporation | 104,343.65 |
| 1926 | Notes receivable for interest charged Westco Pump Corporation | 22,952.27 |
| 1927 | Notes receivable for cash advanced to Westco Pump Corporation | 6,608.58 |
| 1927 | Notes receivable for interest charged Westco Pump Corporation | 1,177.31 |
| 1928 | Notes receivable for interest charged Westco Pump Corporation | 1.00 |
| 1928 | Unpaid notes receivable at end of year | 461,964.34 |
| 1929 | Notes receivable for interest charged Westco Pump Corporation | 1.00 |
| 1929 | Unpaid notes receivable at end of year | 461,965.34 |
| 1930 | Notes receivable for interest charged Westco Pump Corporation | 1.00 |
| | Total | 461,966.34 |
| 1930 | Cash received from Westco Pump Corporation | 26,965.34 |
| 1930 | Unpaid notes receivable at end of year | 435,001.00 |

The cash received from Pump Co. in 1930 was applied against a note dated December 31, 1924, which was for the balance due petitioner at that date. This note included interest of not more than $13,593.92, $5,341.42 for 1923 and $8,252.49 for 1924. This interest was reported in petitioner's returns for 1923 and 1924, and additional amounts were received and reported in the years 1922 and 1925.

Aside from the notes receivable due from Pump Co., petitioner had no financial interest in said company during the taxable years, the capital stock and bonds which it had received having been disposed of prior to such years. The notes were demand notes, bearing interest at 6 percent, but were unsecured except as hereinafter shown.

In addition to the amounts borrowed from petitioner, Pump Co. also borrowed from banks, its notes payable to banks aggregating during the years in question the following: 1928, $203,000; 1929, $122,000; and 1930, $50,000.

It paid the banks upon its indebtedness the sum of $81,000 in 1929 and $31,000 in 1930, and during the same period, paid petitioner the sum of $26,965.34, reducing its indebtedness from $209,962.06 to $182,996.72.

The notes of Pump Co. held by petitioner were unsecured except as follows: At December 31, 1928, the note dated December 31, 1924, in the amount of $209,962.06 was secured by Pump Co. bonds aggregating $159,000, and notes aggregating $15,275.63 were secured by accounts receivable pledged. During the year 1929 the pledged accounts receivable were released. On December 26, 1929, two Guaranty Life Insurance Co. policies for $100,000 each, on the life of Frank S. Main, general manager, were secured by and for the benefit of Pump Co. and assigned to petitioner on January 7, 1930, as security for the Pump Co.'s notes. This security was retained by petitioner throughout the remainder of the taxable years. The policies had no cash surrender value until after payment of the third annual premium, due December 26, 1931, and the insured named in said policies is still living.

At December 31, 1928, 1929, and 1930, the assets and liabilities, per books of the Pump Co., in condensed form, were as follows:

| | December 31, 1928 | December 31, 1929 | December 31, 1930 |
|---|---|---|---|
| ASSETS | | | |
| Cash | $4,073.33 | $19,505.55 | $30,322.53 |
| Other current assets | 261,317.93 | 265,161.03 | 272,457.22 |
| Plant property and equipment, less reserves for depreciation | 275,818.92 | 264,850.95 | 249,812.75 |
| Patents | 300,364.64 | 244,532.48 | 188,700.32 |
| Good-will | 100,000.00 | 100,000.00 | 100,000.00 |
| Other assets | 78,031.88 | 10,049.88 | 10,259.08 |
| Total assets per books | 1,019,606.70 | 904,099.89 | 851,551.90 |
| Debit balance in surplus (excess of liabilities plus capital stock over assets) | 226,218.91 | 258,879.03 | 238,708.94 |
| Total | 1,245,825.61 | 1,162,978.92 | 1,090,260.84 |
| LIABILITIES | | | |
| Capital stock | 409,124.58 | 409,124.58 | 409,101.23 |
| Bonds payable | 35,500.00 | 35,500.00 | 35,500.00 |
| Notes payable—The Bettendorf Company | 461,964.34 | 461,965.34 | 435,001.00 |
| Notes payable—Banks | 203,000.00 | 122,000.00 | 50,000.00 |
| Other notes payable, accounts payable, and accrued accounts | 136,236.69 | 134,389.00 | 160,658.61 |
| Total liabilities per books | 1,245,825.61 | 1,162,978.92 | 1,090,260.84 |

Under the above facts, was petitioner justified in failing to accrue upon its books and report as taxable income the interest due from the two debtor corporations?

It was stipulated that the three corporations kept their books and accounts upon the accrual basis, and, upon such basis, made their returns of income. It is significant—though not controlling—that the debtor corporations accrued upon their books all items of interest due petitioner and deducted them on their income tax returns. The action of the debtor corporations, however, even though their stock

ownership, directorate, and management were identical to that of petitioner, is not binding upon petitioner and should not—and in our approach to the problem before us will not—in any wise militate against petitioner. We shall consider the question purely from the viewpoint of petitioner.

Upon brief, petitioner contends, first, that the interest due from the debtor companies was not "something of exchangeable value * * * coming in or being derived" by it; second, that it should "not be compelled to accrue income where the collection thereof would impair the principal investment"; third, that it was justified in failing to accrue as income the interest due "if there was a doubt of its being received or a doubt as to the time of its receipt"; fourth, "that income should not be taxed until it is certain that it will be received and then only when it becomes available"; and, fifth, that "the cash received from the debtor companies in the taxable years; was not income for those years."

We are of the opinion, and hold, that petitioner is correct in its fifth contention. It was upon an accrual basis, and the payments received by it were applied against, and extinguished, liabilities of the debtor corporation for prior years. Such application of payments was proper; but the fact that they *were made*, materially weakens petitioner's other contentions, and especially its major contention, that the interest accruing at the very time the payments were being received, was uncollectible.

Petitioner's first contention to the effect that the interest can not be considered as income, is untenable. It has been held many times by the courts and by this Board that interest may be subject to accrual either as income or for the purpose of deduction. Cf. *Peyton-DuPont Securities Co.*, 25 B. T. A. 554; affirmed on this point, 66 Fed. (2d) 718; *Umpqua Timber Co.*, 27 B. T. A. 135; *John W. Butler, Inc.*, 1 B. T. A. 1105; *Newaygo Portland Cement Co.*, 27 B. T. A. 1097; affd., 77 Fed. (2d) 536. It must be reported or deducted when accrued or incurred by a taxpayer on the accrual basis. *George D. Davidson Co. of California*, 14 B. T. A. 91; *Cumberland Glass Manufacturing Co.* v. *United States*, 44 Fed. (2d) 433. The general rule is undoubtedly familiar to petitioner, for it so treated all interest due it for the years immediately preceding the taxable years. We shall give this question further consideration, however, in passing upon petitioner's other contentions.

The third and fourth contentions may be considered together; they are based primarily upon the holding of this Board in *Great Northern Railway Co.*, 8 B. T. A. 225–265, and especially upon that portion of the opinion reading as follows:

Under either method [cash or accrual] the taxpayer must have before him some definitely ascertained item of income to record before it can be reported

and if a given transaction does not correspond to the definition of income then there is no income to record whether the taxpayer keeps its books on a cash or an accrual basis. Where books are kept on the accrual basis there is no requirement that there shall be accrued as income that which may never be received.

See also *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *American Cigar Co.*, 21 B. T. A. 464; affd., 66 Fed. (2d) 425; certiorari denied, 290 U. S. 699.

In *Corn Exchange Bank* v. *United States*, *supra*, it was said:

When a tax is lawfully imposed on income not actually received, it is upon the basis of a reasonable expectancy of its receipt, but a taxpayer should not be required to pay a tax when it is reasonably certain that such alleged accrued income will not be received and when, in point of fact, it never was received. A taxpayer, even though keeping his books upon an accrual basis, should not be required to pay a tax on an accrued income unless it is good and collectible, and, where it is of doubtful collectibility or it is reasonably certain it will not be collected, it would be an injustice to the taxpayer to insist upon taxation. *Edwards* v. *Keith* (C. C. A.) 231 F. 110; *United States* v. *Frost*, 25 Fed. Cas. 1221, No. 15172; *Spencer* v. *Lowe* (C. C. A.), 198 Fed. 961.

A taxpayer can not be charged to have realized an income unless there exists reason for believing that the income is likely to be paid or can be collected. Such has been the ruling of the Board of Tax Appeals. *Turner's Falls Power & Electric Co.* v. *Commissioner of Internal Revenue*, 15 B. T. A. 983; *Great Northern Ry. Co.* v. *Commissioner of Internal Revenue*, 8 B. T. A. 225.

In the case of *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730; affd., 81 Fed. (2d) 306, the rule above enunciated was recognized and applied to the facts before the Board in that case. It was also said, however:

Decision of the issue in controversy here must rest upon the determination of a question of fact. If the facts indicate that there was a reasonable expectancy of receipt of the interest involved or that the petitioner would probably be able to collect such interest, then the full amount should have been accrued on its books and reported as taxable income, notwithstanding the obligation afterwards became uncollectible or worthless, and even though this occurred within the same taxable year. [Cf. *Umpqua Timber Co.*, 27 B. T. A. 135.]

The stipulation does not indicate that there was any agreement between petitioner and the debtor corporations that the notes for $1 were to be in full settlement for, and in discharge of, the indebtedness admittedly due as interest for the years 1929 and 1930. On the contrary, both of the debtor corporations accrued upon their books the interest actually due and petitioner upon brief states, "The liability of the debtor companies is not disputed; the question here is the collectibility of the amounts due petitioner." We shall therefore address ourselves to this question, which epitomizes petitioner's third and fourth contentions.

Do the facts indicate that there was a reasonable expectancy during the taxable years that petitioner probably would be able to

collect the interest due from the debtor corporations? If they do then petitioner should have accrued such interest upon its books and reported it as income. An examination of the facts will enable us to find the correct answer to the question.

The facts, shown in detail in the stipulation and summarized above, indicate that the Steel Co. had substantial earnings during both of the taxable years, while the Pump Co. during the year 1930 had earnings of more than $20,000. Steel Co. at the beginning of the period had total assets of approximately $880,000, and at the end of the period $940,000. During the period it reduced its bonded indebtedness by $10,000, paid petitioner upon its notes nearly $55,000, reduced its obligations to banks by payments aggregating $48,000, and decreased its net operating deficit by approximately $100,000— from $388,154.61 at the beginning of the period to $278,560.83 at the end of the period. Pump Co., during the same period, paid petitioner $26,965.34, which included $13,593.92 of interest, paid $153,000 upon its indebtedness to banks, and, notwithstanding the fact that it reduced the carrying figure of patents in its assets by approximately $111,000, its debit balance in surplus remained substantially the same at the end of the taxable years as it was at the beginning. These facts clearly show that there *was* a reasonable expectancy of the receipt of the interest, and, unless there is reason for holding otherwise under petitioner's second contention, the respondent's determination of a deficiency should be approved.

The substance of the second contention, which we will now consider, is that, even though the balance sheets disclose that the debtor corporations are solvent and the indebtedness could be collected by legal process, the interest need not be accrued and reported as income where such legal action could only result in a sacrifice of, or impairment to "the principal investment." Manifestly such a holding is correct where the creditor corporation is the parent of the debtor corporation or where it is the holder of all, or a substantial portion of, its capital stock. Thus, in *Great Northern Railway Co.*, *supra*, the petitioner owning a substantial portion of the capital stock of the debtor corporation, it was held that while the indebtedness might possibly have been collected through receivership proceedings, "* * * this would have been at the sacrifice of petitioner's * * * investment in the stock of these companies", and would not have resulted in income to the petitioner. Cf. also *Atlantic Coast Line Railroad Co., supra*.

But the above rule is not applicable here. "Aside from the notes receivable * * * petitioner had no financial interest in" either of the debtor corporations. (Stip. 24 and 41.) The relation between it and said companies was merely that of debtor and creditor.

We may presume that Bettendorf, the principal stockholder and officer of all of the corporations, would not have wished one of his corporations to wreck the others by requiring payment. But the fact nevertheless remains that the creditor corporation could have collected all interest due it from its debtors during the taxable years, and in doing so would not, in any sense of the word, sacrifice or impair its principal investment, for it had none in the debtor corporations.

We are of the opinion that, under the facts before us, petitioner should have accrued upon its books and reported as income the interest due from the debtor corporations for the years 1929 and 1930. It follows that the respondent did not err in determining the deficiency and such determination should be, and is, approved.

*Judgment will be rendered for the respondent.*