**ROSENTHAL et al. v. HELVERING, Commissioner of Internal Revenue.**

**No. 64.**

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1941.

William B. Markovits, of Middletown, N. Y., for petitioners.

Newton K. Fox, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case comes before us on a petition to review an order of the Board of Tax Appeals, assessing a deficiency in income tax for the year 1936 against the petitioners, who filed a joint return as husband and wife. The only question is whether the husband, whom we shall speak of as the taxpayer, was entitled under § 23(k) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev. Acts, page 828, to deduct a "bad debt" in the year in question. He was a physician, practicing in Monticello, New York, and had lent large sums to a hotel company upon its notes endorsed by two persons named Prisament, who were his wife's brothers and who owned all the company's shares. He had also guaranteed other notes of the company, endorsed by the Prisaments and held by a bank for which he had also given the bank security. The company became insolvent and the taxpayer received nothing by way of dividend; he was forced in addition to pay various amounts to the bank upon his guaranty, so that at the end of a number of transactions not necessary to detail, the Prisaments owed him over $61,000, on which their last payment was made on December 15, 1930. After the failure of their company in 1926, the Prisaments continued in the hotel business, being employed as hotel managers and the like; and as such they had earned $30,000 together with their keep up to the time of their last payment. They were also employed after 1930 at the Hotel Breslin in New York, one at a salary of $7,500 and the other at $3,000; but they saved nothing in those years and had no other property. One, Bambach, a vice-president of the Hotel Breslin, thought well of their abilities and favored them as lessees under a new lease of the hotel, which would have cost $25,000; but he died in December, 1935, and in 1936, fearing that the statute would bar the debt, the taxpayer asked them for new notes. They told him that they could pay nothing, that they would probably lose their jobs, and that they would sign no new notes, unless he gave them the money necessary for the new lease, which he refused to do.

The taxpayer's income between 1929 and 1935, inclusive, had varied from about $2,250 to $10,000 (in 1932 it was nothing) but in 1936 it rose to about $33,000, against which he deducted the amount owed by the Prisaments, which had in fact become a "worthless" debt before 1936. The Board affirmed the Commissioner's refusal to allow the deduction on the ground that the taxpayer had failed to use "the reasonable care and supervision over his property which is to be expected from the ordinary prudent person;" and that "all that stood between the ascertainment of worthlessness of the debt in an earlier year was petitioner's failure for a period of almost five years to make the inquiry." It thought it "inadmissible for a creditor by means of such inaction to withhold a permissible deduction until it will be most advantageous;" and it made no finding as to whether the taxpayer had in fact "ascertained" the debt to be "worthless" in any year before 1936.

The statute makes a distinction between the deduction of "losses" under § 23(e) and (f), and of "bad debts" under § 23(k). "Losses" must be deducted in the year in which they are "sustained" and if the taxpayer fails to learn of them in time, he loses the privilege; debts, on the other hand, must be deducted in the year in which the taxpayer "ascertains" them to be "worthless," and nobody understands that this imposes upon·him the absolute risk of selecting the year when they actually become so. Commissioner v. MacDonald Engineering Co., 7 Cir., 102 F.2d 942, 944; Bartlett v. Commissioner, 4 Cir., 114 F.2d 634, 638. However, beginning with Avery v. Commissioner, 5 Cir., 22 F. 2d 6, 55 A.L.R. 1277, courts have at times charged taxpayers with the duty of selecting that year in which a prudent person with the same information would have concluded that the debt was uncollectible. Indeed, we said as much ourselves in Curtis v. Helvering, Commissioner, 2 Cir., 110 F.2d 1014, though the case could probably have been rested upon the taxpayer's failure to carry the burden of proof. In Curry v. Commissioner, 2 Cir., 117 F.2d 307, 309, 310, we held, however, that the "subjective test" as we called it, was the right one; that is, that the proper year was that in which the taxpayer did "ascertain" the fact, no matter how much earlier a reasonably prudent person would have done so. Moore v. Commissioner, 2 Cir., 101 F.2d 704, and Jones v. Commissioner, 7 Cir.,

38 F.2d 550, suggest the same doctrine, though they can scarcely be said to decide it; Sabath v. Commissioner, 7 Cir., 100 F. 2d 569, is the other way. The cases are not in accord, but with deference we can find no ground for importing any "objective test" into the section. The language does not intimate anything of the sort, the contrast with § 23(e) and (f) suggests the opposite, and there is no disclosed or probable purpose which the natural meaning of the words will thwart. If it be objected that the "subjective test" offers opportunity for evasion, we answer, first, that the taxpayer has the burden of proving a negative —i. e., he must show that he did not "ascertain" the debt to have been "worthless" before the year in question—second, that the fact that a prudent person would have "ascertained" that fact earlier is always evidence that the taxpayer did so himself, and third, that if these two considerations do not adequately protect the Treasury, the responsibility for its better protection rests with Congress. We hold therefore that a taxpayer is not charged with the duty of "ascertaining" the "worthlessness" of a "bad debt" at any time before he actually does so.

Finally, we are to distinguish two situations easily confused with that before us. The failure to "ascertain" that a debt has become "bad" in the year that it becomes so has nothing in common with mistakenly "ascertaining" that it has become bad when it has not. It is at times possible to sustain such a deduction, but only by showing that the taxpayer has pursued the inquiry with reasonable diligence. Sherman & Bryan v. Blair, 2 Cir., 35 F.2d 713; Kahn v. Commissioner, 2 Cir., 108 F.2d 748; Quinn v. Commissioner, 5 Cir., 111 F.2d 372. This follows from the definition of the word, "ascertain," which implies some active inquiry, and is not satisfied by mere assumption or surmise. Second, the taxpayer's failure to "ascertain" the uncollectibility of the debt as early as a prudent person would have done so, must not be actuated by a desire to postpone the deduction to a later year; he may as little choose the year of greatest advantage to himself by deliberately refusing to follow up evidence which will lead to the facts as by refusing to make use of facts themselves. That would indeed be what the Board here called "shutting one's eyes to the facts." But it is one thing not to permit a taxpayer to check an

inquiry which he would otherwise have made, and another to impose upon him the duty of general vigilance; Congress has given no indication that it meant to discriminate against those who are sluggish in attending to their affairs in favor of those who are active.

■■ The Board not having found the only relevant fact and we having no power to make findings of our own, the proper procedure is to reverse the order, and to remit the case for a finding as to whether the husband did in fact "ascertain" that the debt was "worthless" before 1936. Helvering v. Rankin, 295 U.S. 123, 131, 55 S. Ct. 732, 79 L.Ed. 1343.

Order reversed.