In the Matter of CHARLES C. HUITT, as Executor of FINLEY J. SHEPARD, Deceased, Appellant, against CARROLL E. MEALEY et al., Constituting the State Tax Commission, Respondents.

Argued November 15, 1943; decided January 20, 1944.

*Charles A. Roberts* and *Robert O. Muller* for appellant. I. The determination of the State Tax Commission should be annulled because no findings were made by the Commission on the issues of fact raised in the application for revision. (*New York Water Service Corp.* v. *Water Power & Control Comm.,* 283 N. Y. 23; *Matter of Guernsey Breeders Co-op.* v *Noyes,* 284 N. Y. 197.) II. The bonds became worthless in 1933 — not in 1932. As long as a corporation retains any assets whose value in liquidation depends upon the price that can be obtained upon a sale, there is a variable factor which precludes a determination that any definite part of the investment has been irrevocably lost. (*Spring City Foundry Co.* v. *Commr.,* 292 U. S. 182; *Lucas* v. *American Code Cô.,* 280 U. S. 445; *People ex rel. Hull* v. *Graves,* 289 N. Y. 173; *People ex rel. Maloney* v. *Graves,* 289 N. Y. 178; *Helvering* v. *Hammel,* 311 U. S. 504; *Helvering* v. *Price,* 309 U. S. 409; *People ex rel. Conway Co.* v. *Lynch,* 258 N. Y. 245.) III. In any event, there were substantial grounds to justify a prudent man in believing that the bonds still had some potential value at the end of 1932. The taxpayer having ascertained in good faith that these bonds became worthless in 1933, was entitled to deduct the resulting loss in 1933. (*People ex rel. Central Union Trust Co.* v. *Loughman,* 249 N. Y. 409; *Rosenthal* v. *Helvering,* 124 F. 2d 474.)

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley, Orrin G. Judd* and *Wendell P. Brown* of counsel), for respondents. I. The taxpayer was not justified in charging the loss against his 1933 income; he should have taken it in 1932 like other investors in the same bonds. (*Matter of Chisholm* v. *Graves,* 261 App. Div. 78.) II. Failure to make findings should not invalidate the determination. (*Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *Matter of Elite 'Dairy Products, Inc.,* v. *Ten Eyck,* 271 N. Y. 488; *Matter of Thompson* v. *Mealey* 290 N. Y. 230.)

RIPPEY, J. Within the time required by law, Finley J. Shepard filed his personal income tax return for the year 1933, in Item 27 of which he reported $107,391.40 loss from transactions in stocks and bonds and in Schedule E of said return he gave the details of such loss. Under section 360, subdivision 7,

of the Tax Law (L. 1919, ch. 627, § 1, as amd. by L. 1921, ch. 214, § 1), and pursuant to directions contained in Item 31(c) of said return, he included in such loss so reported as a debt ascertained by him to be worthless and charged off within the taxable year an item of $100,000 invested by him in cash on December 5, 1928, in Ten-Year Sinking Fund 6% Income Gold Debentures of Hotel Pierre, Inc. The State Tax Commission disallowed the deduction and assessed an additional income tax for the year 1933 on the ground that the debt became worthless on September 7, 1932, and should have been claimed by the taxpayer as a deduction for the year 1932. On the taxpayer's application under section 374 of the Tax Law for revision and readjustment of the account and of the assessment, without specific findings of fact but after formal hearing at which evidence was taken, the Tax Commission adhered to its former decision and also overruled the claim of the taxpayer for deductions from his gross income in the year 1933 of $1,458 on account of contributions made to charitable and religious organizations under section 360, subdivision 10(b). In this proceeding brought by the taxpayer under article 78 of the Civil Practice Act to review the determination of the State Tax Commission, the Appellate Division modified the determination so as to allow the taxpayer a deduction for the charitable contributions in the amount claimed and to reduce the additional assessment accordingly but otherwise confirmed the determination of the Tax Commission. While the proceeding was pending in the Appellate Division, Mr. Shepard died and his executor has been substituted in his place as petitioner.

Hotel Pierre, Inc., was organized to construct and operate a forty-story hotel in the city of New York. In connection with its financing, the corporation issued First Mortgage Leasehold 6¼% Sinking Fund Gold Bonds aggregating $6,500,000 under a mortgage which constituted a first and the only direct lien upon property of the corporation. In that connection it also issued Ten-Year Sinking Fund 6% Income Gold Debenture Bonds aggregating $3,250,000, junior in every respect to the lien of the mortgage securing the other bonds, of which Mr. Shepard purchased $100,000 at par. The only security back of the Debenture Bonds was such assets of the corporation as were not covered by the mortgage given as security for the senior first bond issue.

The Hotel Pierre was built in 1929 and 1930 on land leased from The Gerry Estates, Inc., and was opened for occupancy on October 1, 1930. Thereafter and during the first six months of 1931, the hotel showed substantial operating income but it was insufficient even to satisfy taxes and ground rents and the operating expense largely exhausted its working capital by the summer of 1931. During the spring of 1931, a committee for the mortgage bondholders was organized. Upon default in the payment of interest upon the bonds, a foreclosure of the underlying mortgage security was instituted by the trustee named in the mortgage in September, 1931, and an equity receiver was appointed. On March 7, 1932, Hotel Pierre, Inc., filed a voluntary petition in bankruptcy, listing its liabilities at more than $10,000,000 and its unencumbered assets at slightly less than $100,000, and the Irving Trust Company was appointed receiver in bankruptcy. On June 8, 1932, the bondholders committee proposed a plan, dated June 1, 1932, for reorganization of the enterprise which was specifically stated as required by law to be subject to the approval of an appropriate court. The plan contemplated the organization of a new corporation to acquire title to the leasehold at the foreclosure sale whose authorized securities should consist of leasehold mortgage income bonds, income debentures, Class A stock and Class B stock which were to be issued to bondholders in certain specified proportions in exchange for the First Mortgage Bonds of Hotel Pierre, Inc., which they held. The plan also offered an option to bondholders and debentureholders to subscribe new money to the extent of ten per cent of their holdings to an aggregate amount of $650,000 which was to serve as working capital of the new corporation for which they would receive in exchange certain specified securities. It was then contemplated that the plan should be effective, if approved, on June 25, 1932. By the chairman of the debentureholders' committee notice was sent to the debentureholders of the proposed plan that if they did not subscribe and pay for bonds of the new company according to the option provided for their benefit, they would receive nothing under the reorganization plan but would " recover only their proportionate share of the unmortgaged assets of Hotel Pierre, Inc. which, as will be indicated by the literature sent you, are now being administered by the Bankruptcy Court."

On June 9, 1932, judgment of foreclosure and sale was entered. On July 7, 1932, a judgment creditor of Hotel Pierre, Inc., intervened in the foreclosure action and procured an order staying the sale of the mortgaged chattels comprising about $1,250,000 worth of furniture and equipment pending the determination of the validity of the alleged mortgage lien thereon and until further order of the court. That stay continued until January 7, 1933, when it was vacated by order of the Supreme Court. A large percentage of the bonds of the bankrupt corporation were surrendered to the trustee and the foreclosure sale was thereafter held on January 12, 1933. Mr. Shepard neither subscribed for securities of the new corporation nor surrendered his debentures to the trustee under the mortgage or to the bondholders' or debentureholders' committees. The referee's report of sale was confirmed on February 11, 1933, and on the same day an order was entered approving the plan of reorganization, there being no evidence that it had been previously offered for approval. It appeared that the new corporation provided for in the plan was the purchaser upon the sale and that the leasehold estate of Hotel Pierre, Inc., was conveyed by referee's deed and the furniture and personal property described in the mortgage were transferred by sufficient bill of sale to the purchaser. After the sale, there remained a deficiency (which at that time was finally established) upon the mortgage in the sum of $6,937,040.15. When that took place, any opportunity which Mr. Shepard had to recoup his loss on the debentures which he had purchased or to participate in the benefits of the reorganization plan was extinguished and thereafter his opportunity to recoup any of his loss existed only to the extent that he might be a participant in a distribution of any assets which the receiver in bankruptcy might be authorized to make. At the time of the foreclosure sale and thereafter, there was litigation in the Federal courts in connection with the bankruptcy of Hotel Pierre, Inc., and it was not until 1936 that a distribution of assets was made to debentureholders and Mr. Shepard received $186.62 by way of a dividend upon such distribution.

The evidence is thus uncontradicted that complete liquidation of Hotel Pierre, Inc., was not effected during the year 1932. Up to the time of the foreclosure sale and transfer of the property by the referee and the vacating of the stay above referred

to, there remained some possibility of a return either as a result of the foreclosure sale, a disapproval of the plan of reorganization, a new plan of reorganization giving the debentureholders greater rights, another extension of time for the debentureholders to join the reorganization, a dividend in the bankruptcy proceeding, or a successful attack by the judgment creditor against the trustee on the issue of the validity of the chattel mortgage covering over $1,000,000 worth of furniture and personal effects. Until action was taken by the court on the plan, Mr. Shepard was not conclusively foreclosed of his opportunity to elect whether or not to come in and thus save some part, at least, of his investment.

There can be no doubt that the indebtedness of Hotel Pierre, Inc., to Mr. Shepard was not a capital loss but was a bad debt within the meaning of subdivision 7 of section 360 of the Tax Law as the statute read in 1932 and 1933. That section provided, so far as material here, that " In computing net income there shall be allowed as deductions: * * * 7. Debts ascertained to be worthless and charged off within the taxable year ". Under that section, the taxpayer was the person charged with the duty of ascertaining whether a debt was worthless, when it became worthless and during what year it should be charged off if he decided to take it as a deduction, provided that he should act in good faith (*People ex rel. Central Union Trust Co.* v. *Loughman*, 249 N. Y. 409). That rule has been similarly applied in construing analogous Federal statutes by the Federal courts (*Moore* v. *Commissioner of Internal Revenue*, 101 F. 2d 704, 707; *Sherman & Bryan, Inc.*, v. *Blair*, 35 F. 2d 713; *Rosenthal* v. *Helvering*, 124 F. 2d 474, 475).

There is neither a finding by the Tax Commission nor any evidence in the case upon which such a finding might be based that the taxpayer, in the case at bar, acted in bad faith in determining that the debt was worthless and in charging it off during the year 1933. On the contrary, the evidence is ample and conclusive that he acted in complete good faith. In addition to the uncertainty arising from the situation of the corporation at the end of 1932, as already pointed out, Mr. Shepard and the person in charge of his financial records discussed the matter and Mr. Shepard made a memorandum to the effect that they had reached the agreement that the loss should await

the final decision in the reorganization matter and should not be taken as a deduction in the 1932 return.

The order of the Appellate Division so far as appealed from should be reversed and the determination of the State Tax Commission annulled, with costs in the Appellate Division and in this court.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Ordered accordingly.