**PETERS v. SHEEHAN et al.**

No. 1013.

District Court, E. D. Missouri, E. D.

Jan. 13, 1945.

George Rassieur, of Rassieur & Rassieur, and Abraham Lowenhaupt and H. M. Stolar, of Lowenhaupt, Waite, Chasnoff & Stolar, all of St. Louis, Mo., for plaintiff.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., for defendants.

HULEN, District Judge.

Plaintiff brings this action to recover a deficiency assessment made against him by the Commissioner of Internal Revenue for income taxes for the year 1937 of $14,962.-67, with interest from June 20, 1940, the date of payment of the deficiency. The alleged error of the Commissioner in asserting the deficiency is based on the following facts:

On January 5, 1929, plaintiff loaned Lindell Gordon, Jr., $32,000, on a collateral note secured by four hundred shares of stock. At that time Gordon was an assistant trust officer in a trust company with which plaintiff was carrying on some business negotiations and plaintiff was impressed by Gordon's sources of information as to stocks which might be purchased and sold at a profit. Soon after the loan was made, there was a break in the market, with the result that after sale of collateral was completed on April 15, 1930, there was an unpaid balance on plaintiff's note of $24,500. Gordon paid interest on the note up to February 5, 1932. Gordon continued his position with the trust company throughout the period here involved up to and including the year 1937. Plaintiff frequently pressed Gordon for payment of the balance on the note and until 1937 Gordon made representations of plans by which he hoped to liquidate the note. In 1936, in response to a demand from plaintiff for payment of the note, Gordon informed the plaintiff that he then had two deals on which, if successful, would enable him to pay his creditors in full. Through plaintiff's knowledge of the plans and men associated with Gordon in the enterprises, he was brought to share Gordon's hopes of success. Nothing resulted from the two plans which Gordon had outlined to the plaintiff. On November 9, 1937, plaintiff wrote Gordon a letter demanding payment of the note, to which Gordon replied on December 27th, and informed the plaintiff in substance that his "two deals * * * have gone completely bad;" that he had no money and no prospect of making any; that he recognized his debt and could "see no prospect" that he would ever be able to pay the note.

Following receipt of this letter, plaintiff talked with Gordon. This conversation, as testified to by plaintiff, was as follows:

"Q. Did you have a talk with Mr. Gordon after receiving this reply? A. Yes. I again asked him to pay something. He said he could not. I threatened to bring suit. He said it wouldn't do me any good because he would take bankruptcy, and I didn't think that was very good business, because I couldn't put the man in bankruptcy."

Based upon the Gordon letter of December 27th and the conversation above referred to, plaintiff concluded that the note of Gordon for $24,500 was a worthless debt, and took the $24,500 as a loss on his income tax return for the year 1937. The Commissioner of Internal Revenue refused to allow the deduction; plaintiff paid the deficiency assessment of $14,962.67, in due time filing a claim for refund. Same was denied, and this suit resulted.

Plaintiff's claim is based on Section 23(k) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 828, pertinent part of which reads as follows:

"Bad Debts. Debts ascertained to be worthless and charged off within the taxable year * * *."

Regulation 94, Article 23(k)-1, contains the following language relative to bad debts:

"If all the surrounding and attending circumstances indicate that a debt is worthless either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books

of the taxpayer shall be allowed as a deduction in computing net income. * * * "

██ Plaintiff's position appears to be that the controlling conditions for the allowance of the deduction are (1) that plaintiff acted reasonably in ascertaining the debt to be worthless in 1937, and (2) that it was charged off during the year. If we are correct in understanding plaintiff's position to be that an examination of the "surrounding and attending circumstances indicate that a debt was worthless either wholly or in part, the amount which is worthless" may be allowed as a deduction in computing the net income, then we are in agreement with him. Under the record made in this case, we are presented with a question at its threshold whether or not the surrounding and attending circumstances indicated that the note of Gordon was entirely worthless in 1937. If the Gordon note, was not entirely worthless, the action of the Commissioner of Internal Revenue must stand. The burden of proof rests upon the plaintiff to show that an examination of the surrounding and attending circumstances in 1937 gave him reasonable cause to believe that the Gordon note was entirely worthless. It is not sufficient that plaintiff believed the note entirely worthless because "for tax purposes one cannot be said to ascertain what in truth does not exist." [1]

### I.

Plaintiff's investigation of the surrounding and attending circumstances as to the value of Gordon's note in 1937 is encompassed within the letter of plaintiff to Gordon and Gordon's reply of December 27, 1937 (Plaintiff's Exhibit 4) and the brief conversation which the plaintiff had with Gordon thereafter, in which plaintiff asked Gordon to pay something on the note and Gordon told him he could not. Plaintiff threatened to bring suit and Gordon told him that it would do no good because he would take bankruptcy.

The record in this case indicates that the facts reflecting the value of the Gordon note in 1937 would have been available to plaintiff had plaintiff inquired into the surrounding and attending circumstances of Gordon's financial worth in 1937. The record is barren of any showing that inquiry was made by the plaintiff of Gordon on the following subjects: what salary was Gordon then making; what income in addition to salary did Gordon have in 1937; what were Gordon's assets and liabilities; what was the status and treatment by Gordon of other debts; what were Gordon's expenses; how much was Gordon paying for insurance; what investments or expenditures was Gordon making. Had plaintiff made a reasonable investigation of the matters referred to he would have learned that Gordon in 1935 had an income from salary and insurance brokerages of $7,178.28, in 1936 an income from salary and insurance brokerages of $8,489.14, in 1937 an income from salary and insurance brokerages of $8,027.25. The income from the same sources for 1938 was $11,799.86. Defendant's Exhibit 3 shows as of December 27, 1937, Gordon was in possession of securities which had cost him $10,860.19. How many of these securities were pledged as collateral, the record does not show, but the Court assumes all, or substantially all of them were pledged. The record shows that for the years 1935, 1936, and 1937, on securities bought after January 1, 1934 and sold prior to December 31, 1937, Gordon had made a profit of $6,068.49. Between 1932 and 1936 Gordon had liquidated a $42,000 debt to the bank, by an advancement from his father-in-law of $32,000. A $16,000 debt owed to another bank in 1929 had been reduced to $2100 by 1944. After 1934 Gordon accumulated a fund in the neighborhood of $1500 for stock trading. Gordon maintained premiums on insurance policies of $42,000. In 1937, he made loans in excess of $800. In 1937 or 1938 he purchased a home with a down payment of $1000.

On one phase of these financial transactions, plaintiff testified as follows:

"Q. And what was your belief as to his income from the bank during 1936, would you say? A. I am afraid I believe his income was just sufficient to maintain him, his wife and children.

"Q. About how much income do you suppose that would be? A. I am sure I wouldn't know.

"Q. Did you inquire? A. No; I never did inquire.

"Q. What I am trying to get at, did it come to your knowledge he might have gotten a raise or had an income increase

---

[1] Mayer Tank Mfg. Co. v. Commissioner of Internal Revenue, 2 Cir., 1942, 126 F.2d 588, loc. cit. 591.

'after 1935? A. No; not after '35, I wouldn't say.

"Q. Would it surprise you to know that during the year 1935 Mr. Gordon received from his bank and certain insurance income in the amount of $7,178.28? A. It would.

"Q. That is for the year 1935. Would it surprise you to know during 1936 he received from the bank and insurance source $8,489.14? A. It would.

"Q. And that year he realized a security gain of $3,968.02? Would it surprise you to learn that during 1937 he received an income from the bank and insurance company in the amount of $8,027.25? A. It is to my surprise. * * *

"The Court: I think you might ask him if he knew, if you care to, that his income was that amount, and if he would consider the note in the same light.

"Q. If you had knowledge his income was that amount would you have considered the note worthless? A. I don't know that I can answer a question like that."

If the plaintiff on learning the facts only with reference to the income of Gordon from salary and insurance brokerage found himself unable to assert that with such knowledge he would still have considered the Gordon note worthless, one cannot help but wonder what would be his position when all of Gordon's transactions in 1937 and the years immediately preceding are submitted to him for the same inquiry.

This Court is not prepared to say that on the record presented the Gordon note of $24,500 could have been paid *in full* or that there was reasonable prospect for its *full payment* at any reasonable future date, in 1937. Neither can this Court find from this record that a reasonable investigation by the plaintiff in 1937 would have resulted in information showing that the note was *entirely* worthless.

We think it not without some significance that plaintiff, by accepting Gordon's letter of December 27, 1937, and conversation soon after, as sufficient basis to conclude that the $24,500 note was a total loss, was enabled thereby to reduce his income tax liability in the sum of $14,962.67. There is no evidence in the record of any attempt whatsoever to compromise the note, and if it could have been compromised for five or ten cents on the dollar, it was not entirely worthless. In view of the record with regard to the progress and activity of Gordon in liquidating his debts, it is not unreasonable to believe that an offer of compromise by plaintiff would have resulted in some recovery on the note. In the case of Helvering v. Ames, 8 Cir., 1934, 71 F.2d 939, loc. cit. 943, the Court said:

"It is a question whether the creditor had any reasonable expectations that the debt, or any part, would or even might be paid. Id. 'But a debt cannot be written off as worthless merely because it is doubtful. Reasonable and intelligent effort must be made to determine its value, and the circumstances thus discovered must be such as reasonably to generate the belief that it is in fact worthless. Naturally no hard and fast rule can be laid down, and each case must be adjudged in the light of its own facts. American Trust Co. v. Commissioner, 9 Cir., 31 F.2d 47, 49."

Also see Quinn v. Commissioner of Internal Revenue, 5 Cir., 1940, 111 F.2d 372, and Sherman & Bryan v. Blair, 2 Cir., 1929, 35 F.2d 713.

██ If the Gordon note had a value and was collectible in part, it was not deductible in whole. See Mayer Tank Mfg. Co. v. Commissioner of Internal Revenue, supra:

"We have held that, if a debt actually becomes worthless in a given year, the taxpayer, notwithstanding that a reasonably prudent person would in that year so have believed, may deduct the debt in a later year, provided that, in good faith and without 'shutting his eyes,' he then first ascertained the fact as to its worthlessness. But there is no room for any element of subjectivity with reference to the issue whether, in fact, the debt lacked value. That a taxpayer, whatever may be his good faith, believes a debt to be valueless does not make it so. *Only debts which have no value (in whole or in part) are deductible.*" [2] (Emphasis added)

In Bingham v. Commissioner of Internal Revenue, 2 Cir., 1939, 105 F.2d 971, loc. cit. 973, the Court said:

"The petitioner apparently did at all times before 1932 have reasonable cause to believe that he could enforce the partial payment of the notes by resorting to the mortgage securing them. While he had

---

[2] Note the comments of the Court in the Mayer Tank Manufacturing Company case, 126 F.2d at page 591, where it found that the secured part of the debt "was worth at least $723" or a very nominal sum.

714

such reasonable expectation *of partial payment,* he could not charge off the entire debt as worthless nor was he bound to make any charge-off." (Emphasis added.)

We cannot escape the conclusion that the plaintiff in 1937 was proceeding on the theory that his chances of collecting Gordon's note as a whole were "worthless." That is not the standard. Reasonable, intelligent effort must be made to determine its value, and if it had a value, to that extent it was not subject to deduction as a bad debt. See Helvering v. Ames, supra.

We are of the opinion not only that the plaintiff failed to make a reasonable investigation as to the value of the Gordon note in 1937, but that the plaintiff has failed to carry the burden and offer proof that the Gordon note for $24,500 was entirely worthless in 1937.

See also 51 F.Supp. 974.

Joseph J. Weinberger, of Passaic, N. J., for plaintiff Bayarsky.

Thorn Lord, U. S. Atty., of Trenton, N. J., and G. A. Fruit, of Washington, D. C., for the United States.

Milton, McNulty & Augelli, of Jersey City, N. J. (John Milton and Thomas McNulty, both of Jersey City, N. J., of counsel), for defendants.