MOSS INDUSTRIES, INC., a corporation of New York, complainant-respondent,

*v.*

IRVING METAL CO., INC., a corporation of New Jersey, defendant-appellant.

[Submitted May 18th, 1948. Decided September 3d, 1948.]

*Mr. Arthur Brown (Mr. Leo S. Lowenkopf,* of counsel), for the defendant-appellant.

*Messrs. Hannoch & Lasser (Mr. Aaron Lasser,* of counsel), for the complainant-respondent.

The opinion of the court was delivered by

FREUND, J.

This appeal is from a final decree wherein it was decreed "that the transactions set forth in the bill of complaint between the complainant and the defendant constituted a loan of $20,820.10 made by the defendant to the complainant, coupled with a pledge by the complainant with the defendant * * * of 208,201 pounds of * * * metals," that the

complainant was "entitled to redeem the said pledge by payment of the sum of $22,902.10" and that it is the owner of the said metals.

The facts are fully detailed in the opinion of the court below, reported in *141 N. J. Eq. 421.* It will suffice for our purposes to repeat them only in part.

The respondent for many years past has been engaged in the business of processing and fabricating various kinds of metals. In May, 1947, respondent, due to a combination of factors, found itself so financially embarrassed that it had overdrawn its bank account by approximately $12,000. It did, however, own a large quantity of new metals of considerable value, which it declined to sell at a sacrifice. Appellant, a scrap metal dealer, was a depositor in the same bank as the respondent and was in a position to loan money. The bank manager suggested to respondent that a loan would tide it over and he introduced Mr. George S. Moss, the respondent's president, to Mr. Irving Reichenthal, president of the appellant corporation, for the purpose of negotiating a loan. The parties reached an agreement whereby the appellant agreed to loan respondent a sum of money to be secured by the delivery to appellant of new metals owned by the respondent. Initially, the appellant agreed to loan respondent 12c for each pound of metal delivered to appellant, who was to store it, and the respondent was to be permitted to redeem the metal in whole or in part at any time within one year by paying 14c per pound. A memorandum to this effect was signed by the respondent, but not by the appellant. Notwithstanding its failure to sign this memorandum, appellant sent its trucks to respondent's premises and carted away about 100,000 pounds of metal, but no moneys were advanced. Thereafter, on June 4th, 1947, upon the insistence of Mr. Reichenthal, the agreement was changed so as to reduce the loan from 12c to 10c per pound of metal delivered, which respondent could redeem in whole or in part by repaying 12c per pound within 60 days. This latter agreement was signed by both parties. Subsequently, respondent delivered additional metal to appellant, until appellant had in its possession 208,201 pounds of metals valued in excess of $70,000. How-

ever, the first advance of money was not made until June 9th, 1947, and the last on June 11th, 1947, for a total of $20,820.10, being 10c per pound on 208,201 pounds of metals.

Both agreements stated "This is not a sale, but an advance" and the later one provided that "The Irving Metal Co., Inc., does not assume any responsibility for fire, theft, losses or damages to the said material." Various receipts for metals delivered, given by appellant to respondent, read: "This invoice does not constitute a sale, but an advance, in which title to the material does not pass." The agreement of June 4th, 1947, however, did provide "In the event Moss Industries, Inc., does not remove the material within sixty days from date, title passes to Irving Metal Co., Inc., and Irving Metal Co., Inc., is the sole owner of this material."

Prior to August 4th, 1947, the expiration of the 60-day period, respondent in accordance with the agreement endeavored to redeem a portion of its property by paying a proportionate amount of its indebtedness, but appellant declined to accept the payment or redeliver the metal. Thereupon respondent, in order to redeem all of its property, succeeded in raising from another bank sufficient moneys with which to pay appellant its entire indebtedness and notified appellant of its readiness so to do. Appellant, conceiving that it could appropriate the metal in its possession if the loan was not repaid by August 4th, 1947, under various pretexts, as appears from the testimony, lured respondent into the belief that the money could be paid thereafter. When respondent on several occasions, viz., on August 5th, 7th and later, offered and tendered payment, appellant insisted that the metals had become its property *ipso facto* on August 4th upon respondent's failure to pay the debt within 60 days after the date of the agreement, and that the metals were no longer subject to redemption.

The bill was filed to redeem the respondent's metal and respondent has deposited with the clerk in Chancery a sum sufficient to pay the entire indebtedness.

Appellant contends that the transaction was a conditional sale while the respondent urges, and the court below found, that it constituted a loan, coupled with a pledge. Disposing

first of appellant's contention, the substance of the argument is that the transaction constituted a conditional sale, because the written agreement contained no provision for liability upon respondent for repayment of the appellant's advances; that the automatic divestiture of title to the metals from respondent to appellant operated in satisfaction of the advances. This argument is not novel and has neither factual nor legal merit. It was presented and considered in the early cases of *Hogan* v. *Jaques, 19 N. J. Eq. 123; DeCamp* v. *Crane, 19 N. J. Eq. 166; Crane* v. *DeCamp, 21 N. J. Eq. 414; Phillips* v. *Hulsizer, 20 N. J. Eq. 308.* The absence in the written agreement of an express promise to repay the advances does not alter the nature of the transaction. In the last mentioned case, the court said "A loan always constitutes a debt, and it does not require a note, or bond, or covenant to make it such, nor is it extinguished by or merged in a mortgage taken for its security."

In this case, as in all others of the construction of contracts, the character of the transaction is determined by the intention of the parties. There is but little dispute about most of the material facts, and we have no difficulty in ascertaining the true nature and character of the transaction between the parties, the rights created and the duties imposed thereby. There can be no doubt but that respondent never intended to sell its metal to appellant for the amount of its advances, which was a fraction of the market value. And, so far as appellant is concerned, the several specific stipulations in the memoranda to the effect that "this is not a sale, but an advance," "title to the material does not pass" and that the risk of loss or damage was not assumed by appellant, emphatically negative the claim now made. It is clear that the advances were loans, that the metals were delivered by way of security for the payment thereof and were to be redelivered upon repayment of the advances, plus 2c per pound for interest and expenses. Such a transaction is, as the court found, a loan, coupled with a pledge. Appellant cannot, by mere assertion, convert an agreement of loan and pledge into a conditional sales agreement; nor can it thus acquire title to property delivered to it as security for the payment of a loan. Indeed,

here the respondent admitted its indebtedness and tendered payment which appellant refused. The evidence in the instant matter presents a clear case of loan and pledge. *Papsco* v. *Novak, 94 N. J. Eq. 642; Mansfield* v. *Kraus, 101 N. J. Eq. 287; Mansfield* v. *Hammond, 117 N. J. Eq. 509.*

From the "first well-ordered exposition of the English law of bailments" by Lord Holt in the celebrated case of *Coggs* v. *Bernard, 2 Ld. Raymond 909 (1704),* to the most recent in the *Restatement of the Law of Security,* the law on the subject under consideration has been singularly uniform and well-settled in this State. Chief-Justice Holt divided bailments into six classes; this case falls into the fourth—thus "The fourth sort is, when goods or chattels are delivered to another as a pawn, to be security to him for money borrowed of him by the bailor; and this is called in Latin, *vadium,* and in English, a pawn or a pledge * * *. As to the fourth sort of bailment, viz., *vadium,* or a pawn * * * the pawnee has in the pawn or pledge * * * a special property, for the pawn is a securing to the pawnee, that he shall be repaid his debt, and to compel the pawnor to pay him * * *. In effect, if a creditor takes a pawn, he is bound to restore it upon payment of the debt." In *Restatement, Security,* § 1, pledge is defined as "A pledge is a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty."

Repeated decisions of this court have held that the pledgor never conveys the general property to the pledgee, but only a special property in the thing pledged; and the effect of a default in payment of the debt by the pledgor is, not to vest the entire property of the thing pledged in the pledgee, but to give him a power to dispose of it, accounting for the surplus, which power, if he neglected to use the general property of the thing pledged, continues in the pledgor who has a right at any time to redeem it. *Donnell* v. *Wyckoff, 49 N. J. Law 48; Security Trust Co.* v. *Edwards, 90 N. J. Law 558; National Surety Co.* v. *Mulligan, 105 N. J. Law 336; Bardsley* v. *First National Bank, &c., Montclair, 111 N. J. Law*

710

*512; Elrae Corp.* v. *Bankers Trust Co., 105 N. J. Eq. 501;* affirmed, *110 N. J. Eq. 66,* and *sub. nom. Bankers Trust Co.* v. *Second National Bank, Atlantic City, 110 N. J. Eq. 64.* The court found as a fact, and we concur in the finding, that the respondent tendered payment, which appellant should have accepted. Generally, the pledgor is entitled to redeem the pledge upon the payment or tender of payment of the loan. *Meisel* v. *Merchants National Bank, 85 N. J. Law 253; Chambers* v. *Kunzman, 59 N. J. Eq. 433.* But even assuming that there had been a default, this did not justify a claim of title to the property pledged in the pledgee. The remedy of the pledgee in the absence of a valid agreement providing otherwise, is to sell the pledged chattels at public sale after giving reasonable notice of the time and place of the sale to the pledgor. *National Surety Co.* v. *Mulligan, supra; Elrae Corp.* v. *Bankers Trust Co., supra; Restatement, Security,* § *48.* Ordinarily, a pledgee may not either directly or indirectly buy at his own sale and if he attempts to do so the sale is voidable. Nothing passes by the form of such sale and the pledgee still holds the property under his original lien as collateral security. *Sokoloff* v. *Wildwood Pier and Realty Co., 108 N. J. Eq. 362;* affirmed, *113 N. J. Eq. 159; Passaic National Bank and Trust Co.* v. *Owens, 111 N. J. Eq. 486; Restatement, Security,* § *51.*

The appellant further rests its claim to title upon the provision in the agreement that in the event respondent "does not remove the material within sixty days from date, title passes to Irving Metal Co., Inc., and Irving Metal Co., Inc., is the sole owner of the material." It is to be observed that it is not the failure of the respondent to repay its debt which would vest title in the appellant, but its failure to remove the material. Conceivably, therefore, the respondent pledgor could pay its indebtedness within time, but fail to remove the pledged metal within 60 days, and under the construction urged by the appellant title would vest in it. The fallacy of such a contention is obvious. A forfeiture and deprivation of title under such circumstances would not be countenanced. An agreement whereby a pledgor is deprived of his equity of redemption is void on the grounds of public policy. *Endicott*

v. *Marvel, 81 N. J. Eq. 378;* affirmed, *83 N. J. Eq. 632.* The rule is thus declared in *Restatement, Security,* § *55:* "*Contract not to Redeem.* (1) An agreement between pledgor and pledgee in connection with the creation of a pledge which purports to deprive the pledgor of his privilege to redeem is void." In the comment under said section, we find a statement which is peculiarly applicable to the facts in this case: "* * * a contract for a forfeiture of the debtor's interest in a pledged chattel, for non-payment of debt or other breach of contract, is against public policy and void. A pledgee will not be permitted, therefore, to make it a condition of a pledge agreement that in the event of a default he can keep the pledged chattel. In spite of such an agreement, the pledgor has the privilege to redeem." "* * * schemes designed to give the pledgee * * * the chattel at a fraction of its value are particularly likely to be condemned by the courts." *Restatement, Security,* § *49, Comment.*

The appellant makes the point that the court below unjustifiably characterized the individuals involved in this litigation. We need only observe that the characterizations have played no part in our determination of the matter. The appellant has, therefore, not been harmed or prejudiced. Further, it fails to cite any authority to show such characterizations constitute legal error.

The decree appealed from will be affirmed.

*For affirmance*—The Chief-Justice, Bodine, Donges, Heher, Colie, Wachenfeld, Eastwood, Burling, Jacobs, Wells, Dill, Freund, McLean, Schettino, JJ. 14.

*For reversal*—None.