HATBORO NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46155. Filed July 28, 1955.

*Early L. Gilbert, C. P. A.,* and *Edward B. Duffy, Esq.,* for the petitioner.

*William J. Hagan, Esq.,* for the respondent.

788

## OPINION.

Bruce, *Judge:* The principal issue presented is to determine the tax consequences of petitioner's sale of a one-half interest in certain unimproved lots in 1946.

In view of the shifting positions (including its lack of clarity as to any of them) taken by petitioner—in its returns for the taxable years involved, in its petition, in its opening statement at the hearing, and on brief—it is somewhat difficult to apprehend precisely upon what theory petitioner is relying. In its return for the year 1946 petitioner claimed a long-term capital loss of $7,736 on the sale of lots. Respondent allowed a long-term capital loss of $489.17. In its petition the petitioner claims that the sale "constituted a liquidation of a debt." However, petitioner now contends in its brief that when it took the lots together with other assets received as collateral security for the $32,500 loan to Cornell in 1930, it was really purchasing the lots and other assets for $32,500.

Respondent contends that the assets, including the lots, were received by petitioner as collateral security for the loan. Respondent further contends that when in 1936 petitioner transferred "Cornell's loans of $32,500" from its "loans and discounts" account to its "other real estate" account it acquired absolute title to the collateral, and that petitioner's basis for determining gain or loss as to each of the properties formerly held as collateral was the value of such property when taken in satisfaction of the loan.

In our opinion, the correct theory is the one set forth in the petition which, paradoxically, is the theory least favorable to the peti-

tioner. There is absolutely no merit in petitioner's position that it was purchasing assets when it received the lots and other assets as collateral security for the Cornell loan. We also disagree with respondent's position that petitioner acquired absolute title to the collateral when it transferred the loan from one account to another in 1936 pursuant to the instructions of the National Bank Examiner. "Bank holding note as [*sic*] collateral does not, because of default in payment of debt due it, become owner of collateral, but must acquire title thereto in manner authorized by contract of pledge." 7 *Zollmann*, Banks and Banking, section 4886. The note given by Cornell authorized the petitioner, if the debt was not paid at maturity, to sell the collateral at public or private sale to anyone including itself, and to apply the proceeds to the payment of the debt and costs, returning any surplus to Cornell. While this contract gave petitioner the right to purchase the assets pledged as collateral at private sale, this right was not exercised. As the Supreme Court of Pennsylvania pointed out in *Thomas* v. *Waters*, 38 A. 2d 237, 240, 241, 350 Pa. 214, "* * * the power to sell and to buy was not one to be executed by a taking. * * * Until foreclosure the pledgee could not obtain an absolute title and the foreclosure could take place only pursuant to the agreement contained in the notes; * * *." Respondent does not contend that petitioner sold the assets to itself. The wording of the resolution of petitioner's board of directors passed on March 12, 1936, negates any possibility that a sale, rather than a mere book transfer, was intended. Also, the interest endorsement to the note made on July 15, 1938, is wholly incompatible with the position that in 1936 petitioner accepted the collateral in full discharge of the indebtedness.

Absolute title to the collateral did not pass and Cornell's equity of redemption was not foreclosed until petitioner sold to others or otherwise liquidated the collateral in later years. *Jones* v. *Costlow*, 36 A. 2d 460, 349 Pa. 136; *Huntingdon Valley Trust Co.* v. *Norristown-Penn Trust Co.*, 196 Atl. 821, 329 Pa. 356. See also *Moss Industries* v. *Irving Metal Co.*, 61 A. 2d 159 (N. J.). The proceeds from the sale of the lots in 1946 should have been applied toward the discharge of the indebtedness, and petitioner did not realize any capital gain or loss on the sale. *Old Colony Trust Associates* v. *Hassett*, 150 F. 2d 179.

The facts in the instant case are unlike those in *Elverson Corporation*, 40 B. T. A. 615, affd. (C. A. 2) 122 F. 2d 295, and *First National Bank, Philipsburg, Pa.*, 43 B. T. A. 456, cited by respondent. There the taxpayer acquired title to the collateral by or in accordance with the terms of an agreement with the debtor.

In passing we might point out that petitioner's right to a deduction for partial worthlessness of the Cornell loan in 1946 is not before us as petitioner has not claimed a right to such a deduction in either its

1946 income tax return or in its petition.  (Cf. Regs. 111, sec. 29.23 (k)–1(c).)  Furthermore, in no event could the deduction exceed the difference between the cash surrender value of the policies of insurance, which was the only remaining collateral, and the remaining balance due on the loan.  *Dominion National Bank*, 26 B. T. A. 421.  Since there is no evidence with respect to the cash surrender value at the end of 1946 of the policies of insurance it is impossible to determine if and to what extent the Cornell loan had become worthless.  Cf. *Mayer Tank Mfg. Co.* v. *Commissioner*, (C. A. 2) 126 F. 2d 588.

Respondent granted petitioner's request to switch to the reserve method of accounting for bad debts beginning with the taxable year 1947.  Petitioner complains that respondent, in computing (in the manner provided in Mim. 6209, 1947–2 C. B. 26) the proper deductions for additions to petitioner's bad debt reserve in 1947 and 1948, erroneously included the $32,500 Cornell loan in aggregate loans outstanding in the years 1930 to 1935, inclusive.  In the alternative petitioner contends that if there was debt it became partially worthless, and an appropriate adjustment should be made in the aggregate amount of bad debts used in the computation.  There is no merit in either of petitioner's alternative contentions.  The evidence shows that the Cornell loan was outstanding in the years 1930 to 1935, inclusive, and petitioner has not shown that the loan became partially worthless.  Therefore, there is no basis for disturbing respondent's determination.

*Decision will be entered for the respondent.*